UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| HUTCH & ASSOCIATES, INC. d/b/a HUTCH'S RESTAURANT; and DELAWARE RESTAURANT HOLDINGS, LLC d/b/a REMINGTON TAVERN & SEAFOOD EXCHANGE, for themselves and on behalf of a class of similarly situated policyholders,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>- v -<br><br>ERIE INSURANCE COMPANY OF NEW YORK; ERIE INDEMNITY COMPANY d/b/a ERIE INSURANCE GROUP; ERIE INSURANCE COMPANY; ERIE INSURANCE PROPERTY & CASUALTY COMPANY; ERIE INSURANCE EXCHANGE; and FLAGSHIP CITY INSURANCE COMPANY,<br><br>　　　　　　　　　　　　Defendants. | <u>AMENDED COMPLAINT</u><br><br>Civ. Action No.:<br>1:20-cv-00896-GWC<br><br>*Hon. Geoffrey Crawford, Presiding*<br><br>JURY TRIAL DEMANDED |

---

Plaintiffs Hutch & Associates, Inc. d/b/a Hutch's Restaurant ("Hutch") and Delaware Restaurant Holdings, LLC d/b/a Remington Tavern & Seafood Exchange ("Remington") (collectively "Plaintiffs" or the "Insureds"), for themselves and as a representatives of a proposed class of plaintiff policy holders, by and through their attorneys, Duke Holzman Photiadis & Gresens LLP, as and for their Complaint against Defendants Erie Insurance Company of New York ("Erie NY"); Erie Indemnity Company d/b/a Erie Insurance Group ("EIG"), Erie Insurance Company ("Erie IC"), Erie Insurance Property & Casualty Company ("Erie IPC"), Erie Insurance Exchange (Erie Exchange"), and Flagship City Insurance Company ("Flagship") (each of the foregoing being a "Defendant" and collectively the "Defendants"), state and allege as follows:

<u>INTRODUCTION</u>

1.      The instant matter arises from contracts of insurance entered into between (a) Plaintiffs and other Class members, and (b) Defendants.

2.      The Policies issued by Defendants to Plaintiffs and the Class members are generally known as commercial property insurance, and include, without limitation: (a) policies identified by Defendants as "Ultrapack Plus Policy" ("Ultrapack Policy"); and (b) "Ultrapack Plus Commercial Property Coverage Part", Form PK-00-02 (Ed. 9-18) CL-0002 (the "Policy").

3.      The Policy issued by Defendants to Plaintiffs and the other Class members is "all risk" and, as such, provides coverage for physical loss of property resulting from any cause unless the loss is "Excluded" or "Limited."

4.      The Policy issued by Defendants to Plaintiffs and Class members does not contain an exclusion or limitation expressly addressing losses caused by or related to a virus.

5.      Defendants have stated that the Policy does not provide Plaintiffs and other Class members with insurance coverage benefits for losses due to and/or relating to the novel coronavirus (the "Virus"), the disease caused by the Virus–COVID-19 ("CV-19"), and/or the actions of various civil authorities in response to the Virus and/or CV-19 ("CA Orders"), including that there is no coverage for business interruption, the loss of business income, extended business income, loss based on the actions of civil authorities to limit access to property, property loss, extra expense loss, and dependent property loss (collectively "BI Losses").

6.      The Ultrapack Plus Commercial Property Coverage Part, under "**YOUR DUTIES AFTER A LOSS**," directs and requires:

> In case of a covered "loss", you [Plaintiffs and other Class members] must perform the following duties:
> . . .

    b.    Protect the property from further damage. If necessary for property protection, make reasonable repairs and keep a record of all repair costs;

. . .

    i.    In addition to the other conditions under Income Protection (Coverage 3), make necessary replacements or repairs and use all available means to eliminate any unnecessary delay in order to resume operations as soon as possible[.]

Commonly referred to as a "Sue and Labor" provision, policyholders are entitled to coverage for reimbursement of costs and expenses incurred as a result of complying with such provision. ("SL Losses").

7.    Defendants have denied coverage to Plaintiffs and other Class members for BI Losses, SL Losses, and other damages arising from and related to the Virus, CV-19, and the CA Orders.

8.    Defendants breached their insurance contracts with Plaintiffs and other Class members by failing to provide the coverage and benefits as identified herein.

<u>PARTIES</u>

9.    Plaintiff Hutch & Associates, Inc. d/b/a Hutch's Restaurant is a New York business corporation with its principal place of business located in the State of New York, County of Erie, at 1375 Delaware Avenue, Buffalo, New York (the "Hutch Premises").

10.    Plaintiff Delaware Restaurant Holdings, LLC d/b/a Remington Tavern & Seafood Exchange is a New York business corporation with its principal place of business located in the State of New York, County of Erie, at 184 Sweeney Street, North Tonawanda, New York (the "Remington Premises") [The foregoing Hutch Premises and Remington Premises shall hereinafter be referred to collectively as the "Properties"].

11.     Upon information and belief, Defendant EIG is a business corporation organized under the laws of the State of Pennsylvania and registered and duly authorized to transact insurance business in the State of New York.

12.     Upon information and belief, Defendant Erie IC is a stock insurance company of Defendant EIG, organized under the laws of the State of Pennsylvania and registered and duly authorized to transact insurance business in the State of New York.

13.     Upon information and belief, each of the following Defendants is a stock insurance company of Defendant EIG:

      a.     Erie NY, an insurance company organized under the laws of the and duly authorized to transact insurance business in the State of New York;

      b.     Erie IPC, an insurance company organized under the laws of the State of Pennsylvania and registered and duly authorized to transact insurance business in the State of New York;

      c.     Erie Exchange, an insurance company organized under the laws of the State of Pennsylvania and registered and duly authorized to transact insurance business in the State of New York; and

      d.     Flagship, an insurance company organized under the laws of the State of Pennsylvania and registered and duly authorized to transact insurance business in the State of New York.

The foregoing affiliated stock insurance companies of EIG, other than Defendant Erie IC, are hereinafter the "Affiliates."

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1332(a) and pursuant to the principles of pendant and supplemental jurisdiction under 28 U.S.C. § 1367.

15.     Personal jurisdiction exists over Defendants because Defendants conduct business in the State of New York and in this District, has caused and continues to cause damage to Plaintiffs

in this District, and/or otherwise avails itself of the privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

16.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants conduct business in this district, (b) a substantial part of the events or omissions giving rise to the claims occurred in this District, and (c) Defendants caused damage to Plaintiffs in this District.

FACTS

A.    The Policy

17.    Defendants EIG and Erie IC issued and delivered to Plaintiff Hutch an insurance policy bearing the policy number Q97-0914356 (the "Hutch Policy").  A copy of the Hutch Policy is attached hereto as *Exhibit A*.

18.    Defendants EIG and Erie IC issued and delivered to Plaintiff Remington an insurance policy bearing the policy number Q97-0917919 (the "Remington Policy").  A copy of the Remington Policy is attached hereto as *Exhibit B*. (The Hutch Policy and Remington Policy are hereinafter collectively referred to as "Plaintiffs' Policy").

19.    The Plaintiffs' Policy is the same or substantially similar to each Policy issued by Defendants to Class members.

20.    Each Policy, including the Plaintiffs' Policy, was issued in consideration of a premium which was paid to, received, and retained by Defendants.

21.    The Hutch Policy covered certain losses occurring between February 4, 2020, and February 4, 2021, including losses occurring at the Hutch Premises.

22.    The Remington Policy covered certain losses occurring between March 11, 2020, and March 11, 2021, including losses occurring at the Remington Premises.

23.     In the "ULTRAPACK PLUS POLICY" Plaintiffs' Policy provides that "ERIE INSURANCE GOUP is proud to present this policy."

24.     The Plaintiffs' Policy identifies Defendant Erie IC as the Insurer.

25.     Hutch is identified in the Hutch Policy as the "Named Insured."

26.     Remington is identified in the Remington Policy as the "Named Insured."

27.     Each Policy, including the Plaintiffs' Policy, provides coverage on an "all risk" rather than specified peril basis.

28.     "All risk" insurance policies cover all risks of loss except for risks that are expressly and specifically excluded.

29.     Under "SECTION II – PERILS INSURED AGAINST" under the sub-heading "Covered Causes of Loss" of the Ultrapack Plus Commercial Property Coverage Part, the Policy provides that "[t]his policy insurers against direct physical 'loss', except 'loss' as excluded or limited in this policy."

30.     Under "SECTION 1 – COVERAGES", subsection "INCOME PROTECTION – COVERAGE 3" of the Ultrapack Plus Commercial Property Coverage Part, the Policy provides coverage for, among other things: "A. Income Protection Coverage"; and "B. Extra Expense Coverage".

31.     Under "SECTION 1 – COVERAGES", subsection "C. Additional Coverages" of the Ultrapack Plus Commercial Property Coverage Part, the Policy provides coverage for, among other things: "1. Civil Authority"; and "2. Full Resumption of Operations" (also known as extended business interruption coverage).

32.     Plaintiffs and other Class members have suffered BI Losses that are expressly covered under "SECTION 1 – COVERAGES", subsection "INCOME PROTECTION – COVERAGE 3", subsection "C. Additional Coverages", and other provisions of the Policy.

33.     Under the subsection titled under "**YOUR DUTIES AFTER A LOSS**" of the Ultrapack Plus Commercial Property Coverage Part, the Policy provides:

> In case of a covered "loss", you [Plaintiffs and other Class members] must perform the following duties:
> . . .
> b.    Protect the property from further damage. If necessary for property protection, make reasonable repairs and keep a record of all repair costs;
> . . .
> i.     In addition to the other conditions under Income Protection (Coverage 3), make necessary replacements or repairs and use all available means to eliminate any unnecessary delay in order to resume operations as soon as possible[.]

34.     Plaintiffs Hutch and Remington, and upon information and belief Class members, complied with the insureds' obligations under Duties in Event of Loss or Damage and incurred SL Losses.

35.     The "Exclusions" do not reference, restrict, limit, or preclude coverage for losses resulting directly or indirectly from a virus.

36.     The "Limitations" do not restrict, limit or preclude coverage for losses resulting directly or indirectly from a virus.

B.      <u>Absence of "Exclusion of Loss due to Virus or Bacteria" Endorsement</u>

37.     Since in or before 2006, the insurance industry, including Defendants, have been aware of the risks of damage to property, physical loss of property, and damage to business operations associated with viruses and bacteria.

38.     In or about 2006, the insurance industry adopted a standard form policy endorsement for commercial property policies commonly known as "Exclusion of Loss Due to

Virus or Bacteria." This has otherwise been referred to as Multistate Form Filing CF-2006-OVBEF and/or endorsement CP 01 75 07 06 (New York) or CP 01 40 07 06 (collectively, the "Virus Exclusion").

39.     Defendants are members of the insurance industry and subscribe to, have access to, rely on, and adopt ISO forms.

40.     Defendants are, and at all relevant times hereto were, aware of the Virus Exclusion.

41.     Defendants chose to issue insurance policies without the Virus Exclusion despite their express and actual knowledge of the existence of the same.

42.     The intended purpose of the Virus Exclusion is to eliminate virus and bacteria related losses from coverage under all risk insurance policies.

43.     The Policy does not contain the Virus Exclusion.

44.     The Policy does not contain an exclusion substantially the same or similar to the Virus Exclusion.

45.     Defendants have issued all risk insurance policies to policyholders that do contain a virus exclusion.

46.     For example, in a concurrent lawsuit arising from Defendants' denial of business interruption coverage benefits resulting from the Virus, CV-19, and/or the CA Orders (commenced in the United States District Court for the Western District of Pennsylvania and captioned *Close Enters. Inc. v. Erie Ins. Grp.*, Civil Action No. 1:20-cv-00147 (the "CEI Litigation")), the insured submitted as an exhibit to its complaint EIG and Erie Exchange's denial letter (the "CEI Denial").

47.     Annexed hereto as *Exhibit C* is a copy of the CEI Denial (*see also* CEI Litigation Docket, Doc. 1-2).

48.     The CEI Denial expressly states: "the policy excludes coverage for damage caused by virus, bacterium, or microorganism." (Ex. C).

49.     The CEI Denial also cites the operative exclusion in the policy:

**SECTION III – EXCLUSIONS**
. . .
**B.     Coverages 1, 2, and 3**

We do not cover under Building(s) – Coverage 1, Business Personal Property and Perosnal Property of Others – Coverage 2, and Additional Income Protection – Coverage 3 "loss" or damage caused:

16.     By or resulting from any virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness, or disease.

(Id. (emphasis in original)).

50.     The CEI Denial, and the policy language cited therein, is in stark contrast to the denials received by Plaintiffs in this case.

51.     By letter dated March 30, 2020, Defendants EIG and Erie IC issued a written coverage denial to Plaintiff Hutch (the "Hutch Denial").

52.     A copy of the Hutch Denial is attached hereto as *Exhibit D*.

53.     By letter dated March 31, 2020, Defendants EIG and Erie IC issued a written coverage denial to Plaintiff Remington (the "Remington Denial").

54.     A copy of the Remington Denial is attached hereto as *Exhibit E*.

55.     Defendants did not issue Plaintiff Hutch, Plaintiff Remington, or Class members denial letters containing any mention of a virus exclusion.

56.     None of Plaintiff Hutch, Plaintiff Remington, nor Class members' Policies contain the virus exclusionary language set forth in the CEI Denial in their respective "SECTION III – EXCLUSIONS" portion of the Policy. (*See* Exs. A & B).

57.     Defendants had knowledge of the existence of virus exclusions, including that referenced in the CEI Denial and the Virus Exclusion, at the time and/or before they issued insurance policies to Plaintiffs and the Class members.

58.     Defendants actually issued insurance policies containing virus exclusionary language to certain policyholders at the time and/or before they issued insurance policies to Plaintiffs and the Class members.

59.     Defendants made the affirmative decision to omit virus exclusionary language, including that contained in the CEI Denial and the Virus Exclusion, when issuing insurance policies to Plaintiffs and the Class members.

60.     The Policy does not exclude or limit coverage for losses experienced by Plaintiffs directly or indirectly from the Virus, CV-19, or the CA Orders.

61.     Defendants' conduct, including their decision to issue all risk policies without the known Virus Exclusion and the virus exclusionary language adopted and issued by Defendants in other all risk policies, establishes that the presence of the Virus is and/or causes loss of or damage to property that is covered under the Policy.

C.     Plaintiff's Covered Loss

62.     Plaintiffs' employees, customers, and/or vendors: (a) were exposed to the Virus, (b) tested positive for the Virus and/or CV-19, (c) were otherwise diagnosed as infected with the Virus and/or having CV-19, (d) exhibited symptoms consistent with infection by the Virus and/or having CV-19, and/or (e) were instructed by civil authorities and/or their medical providers to self-isolate, quarantine, and/or suspend normal business operations.

63.     Plaintiffs' Premises, personal property, and dependent property:  (a) were exposed to the Virus, (b) had the Virus or persons with CV-19 present at their respective locations, and/or

(c) could no longer be used or operated due to orders of civil authorities issued in response to the Virus and CV-19.

64.     Property in the immediate area of Plaintiffs' Premises: (a) was exposed to the Virus, (b) had the Virus on surfaces therein, and/or (c) could no longer be used or operated due to orders of civil authorities issued in response to the Virus and CV-19.

65.     In New York, the Virus became ubiquitous, such that it existed and/or exists throughout the State, including, without limitation, Plaintiffs' Premises and property in the immediate area of Plaintiffs' Premises.

66.     The Virus was present at, in, throughout, and on Plaintiffs' Premises and property within one mile of Plaintiffs' property.

67.     The Virus causes physical loss of and/or damage to property.

68.     The presence of the Virus constitutes direct physical loss of and/or damage to property.

69.     At least one governmental entity has acknowledged that the Virus causes physical loss of and/or damage to property. Annexed hereto as *Exhibit F* are copies of The City of New York, Office of the Mayor, Emergency Executive Orders, issued by Mayor Bill de Blasio (the "NYC Executive Orders").

70.     The NYC Executive Orders expressly state: "WHEREAS, this order is given because of the propensity of the virus to spread person to person and *also because the virus physically is causing property loss and damage*[.]" (Ex. F (emphasis added)).

71.     The presence of the Virus and persons with CV-19 caused direct physical loss of or damage to the covered property under the Plaintiffs' Policy and the Policies of other Class members, as well as to property in the immediate area of such covered property.

72. The presence of the Virus and the resulting direct physical loss of or damage to property (both at Plaintiffs' Premises and at property in the immediate area of the same) and persons with CV-19 caused civil authorities throughout New York to issue orders requiring the suspension of business and/or use of commercial property, including the property of Plaintiffs and other Class members as well as property in the immediate area of such covered property.

73. The CA Orders prohibited access to the covered properties as a result of the damage and the ongoing and continuous loss and damage resulting from the Virus.

74. The CA Orders include, but are not limited to, the following Executive Orders of New York State Governor Cuomo:

     a.    On March 7, 2020, by Executive Order 202, Governor Cuomo declared a Disaster Emergency for all of New York State because of CV-19;

     b.    On March 18, 2020, by Executive Order 202.6, Governor Cuomo reduced all non-essential businesses' on-site workers by 50%, effective at 8:00 p.m. on March 20, 2020;

     c.    On March 19, 2020, by Executive Order 202.7, Governor Cuomo reduced all non-essential businesses' on-site workers by 75%, effective at 8:00 p.m. on March 21, 2020;

     d.    On March 20, 2020, by Executive Order 202.8, Governor Cuomo reduced all non-essential businesses' on-site workers by 100%, effective at 8:00 p.m. on March 22, 2020; and

     e.    Supplemental executed Orders that restricted and/or suspended business activities at and/or use of commercial property.

75. Plaintiffs Remington and Hutch substantially ceased business operations on or around March 16, 2020, as a result of the Virus, CV-19, and the CA Orders.

76. Plaintiffs suffered a direct physical loss of or physical damage to Covered Property, including the BI Losses, as a result of the Virus, CV-19, and the CA Orders ("Loss").

77. The Loss constitutes an occurrence under the Policy.

78. Plaintiffs are entitled to be covered and indemnified under the Policy for the Loss.

D.    Loss Reporting of BI Losses to Defendants

79.    Upon information and belief, Defendant EIG controlled, directed, and/or participated in the preparation of the Policy, the underwriting relating to the issuance of the Policy, and the claims intake, investigation, and administration under the Policy, including handling of claims arising out of or related to the Virus.

80.    The first sentence of the Ultrapack Plus Policy expressly states "ERIE INSURANCE GROUP is proud to present this policy."

81.    Thus, in addition to EIG being bound by traditional principles of agency, EIG is an actual party to the insurance contracts entered into with Plaintiffs and the Class members.

82.    Upon information and belief, Erie IC and the Affiliates all acted uniformly in their handling of CV-19 claims pursuant to and in accordance with the control and/or direction of Defendant EIG.

83.    Defendant EIG commissioned and manifested a desire for the Affiliates to act on its behalf subject to EIG's control and/or direction when writing and issuing policies, adjusting and investigating claims, and making coverage determinations.

84.    The Affiliates has actual and apparent authority to act on behalf of EIG.

85.    The Affiliates in fact acted on behalf of EIG and in EIG's name with EIG's express, implied, and apparent authority.

86.    The Affiliates consented to so act on behalf of EIG.

87.    Defendant EIG's statements, representations, and conduct communicated to Plaintiffs and Class members provided a reasonable belief and appearance that the Affiliates possessed the authority to, and were, acting on behalf of EIG with regard to the insurance policies at issue.

88.     Defendant EIG exercised control over the Affiliates by determining and issuing direction as to how policies, claims, investigations, and coverage determinations relating to the Virus, CV-19, and/or the CA Orders were to be handled.

89.     The Affiliates acts (including issuing the DFS Response, making coverage determinations, and issuing denial letters) were, in both form and substance, those of EIG.

90.     Defendant EIG and the Affiliates share and use the same logo(s).

91.     Defendant EIG and the Affiliates share and use the same slogan(s).

92.     Defendant EIG and the Affiliates share and use the same forms, including the DFS Response, ISO forms, policy forms, reservation of rights letters, and denial letters.

93.     Defendant EIG and the Affiliates share the same underwriting department, such that the underwriting department underwrites claims for each Affiliate indiscriminately and indistinguishably.

94.     Defendant EIG and the Affiliates share the same adjusters and examiners, such that the same individuals investigate, adjust, examine, and make coverage determinations on claims for each Affiliate indiscriminately and indistinguishably.

95.     Defendant EIG and the Affiliates, and their employees, share the same office space.

96.     Defendants EIG, Erie IC, Erie IPC, and Erie Exchange all have the same address listed for their corporate headquarters and service of process with the Pennsylvania Department of State.

97.     Defendant EIG and the Affiliates share and use the same telephone numbers.

98.     Defendant EIG together with Erie IC and the Affiliates operate phone lines, including 1-800-367-3743 and 800-458-0811, to report claims and/or losses under the Policy (the "Erie Numbers").

- 14 -

99.     Upon information and belief, the Affiliates participate with Defendants EIG and Erie IC in the operation of the Erie Numbers for the reporting of claims and/or losses with respect to Ultrapack Policies and similar commercial property insurance issued by the Defendants.

100.     Defendant EIG and the Affiliates share and use the same marketing.

101.     Defendant EIG and the Affiliates share and use the same website(s).

102.     Defendant EIG together with Erie IC and the Affiliates developed and operated a website for New York Customers with business income related claims related to the Virus: https://www.erieinsurance.com/support-center/covid/new-york-covid19 (the "Erie Website").

103.     Plaintiffs timely reported the Loss to Defendant via numerous methods, including the Erie Numbers, e-mail, and/or through their agent.

104.     Defendant EIG and the Affiliates share and use the same internal systems, including information technology ("IT") systems, phone systems, case management systems, and underwriting systems.

105.     The Affiliates and/or their employees request approval from EIG for, and rely on EIG's direction and control over, decision making authority, including settlement authority, coverage decisions, and claims handling practices.

106.     Defendant EIG mandates that the Affiliates and their employees comply with the policies and procedures set forth by EIG.

107.     The Affiliates entire business model is designed to assist and support EIG.

E.     Uniform Practice to Deny Coverage for Losses related to the Virus

108.     Defendants EIG and Erie IC arbitrarily and wrongfully disclaimed coverage for Plaintiffs' Loss.

109.     Defendants contend that the commercial property policies issued by EIG, Erie IC, and/or the Affiliates in New York do not provide coverage for losses resulting from or related to the Virus, CV-19, or the CA Orders.

110.     Defendants' denial of coverage for losses related to or arising out of the Virus, CV-19, and the CA Orders was predetermined and without regard to the individual circumstances of Plaintiffs or other insureds, including the presence of the Virus at the insured premises or property in the immediate area thereof.

111.     By letter dated March 10, 2020, the New York State Department of Financial Services directed all insurers that had issued commercial property insurance in New York to provide details on the business interruption coverage provided under such policies ("DFS Directive").  A copy of the DFS Directive is attached hereto as *Exhibit G*.

112.     The DFS Directive explained that the purpose of this requirement was to ensure that insurance companies "explain to policyholders the benefits under their policies and the protections provided in connection with COVID-19" and required "each Insurer examine the policies it has issued and explain the coverage each policy offers in regard to COVID-19."

113.     Defendants EIG, Erie IC, and/or the Affiliates collectively prepared a template response to the DFS Directive  ("DFS Response").  A copy of the DFS Response is attached hereto as *Exhibit H*.

114.     Plaintiffs, and upon information and belief other members of the proposed class of policyholders, were the intended recipients of the DFS Response letter.

115.     The DFS Response failed to follow the directives set forth in the DFS Directive, including, without limitation, the directive to "explain to policyholders the benefits under their policies and the protections provided *in connection with COVID-19*" and the requirement that

- 16 -

"each Insurer examine the policies it has issued and explain the coverage each policy offers *in regard to COVID-19*."

116.    Rather, Defendants provided a non-responsive, general summary of coverage without explaining to their insureds the protections provided in connection with COVID-19.

117.    The only mention of "COVID-19" in the DFS Response was in reciting that the New York State Department of Financial Services issued the DFS Directive.

118.    Upon information and belief, before Plaintiff and other members of the proposed class of policyholders submitted notice of and information about their claims related to the Virus, CV-19, and the CA Orders, Defendants had determined not to afford coverage for any such claims.

119.    Upon information and belief, when circulating the DFS Response, Defendants had actual knowledge that they had thousands of impacted policyholders in New York.

120.    Upon information and belief, before preparing and circulating the DFS Response, Defendants made the pre-determined decision not to comply with the terms of the DFS Directive in order to induce their insureds into not submitting claims related to or arising from COVID-19.

121.    Upon information and belief, Defendants mailed the DFS Response letters in batches due to the large number of policyholders.

F.    Coverage Denial for Losses related to Virus, CV-19 and CA Orders

122.    Defendants denied coverage to Plaintiffs and other policyholders for losses related to the Virus, CV-19, and/or the CA Orders.

123.    By letter dated March 30, 2020, Defendants EIG and Erie IC issued a written coverage denial to Plaintiff Hutch, noting: "We regret to inform you that there is no coverage for your loss of income because there is no direct physical loss to your building or business personal property." (Ex. D).

124.    By letter dated March 31, 2020, Defendants EIG and Erie IC issued a written coverage denial to Plaintiff Remington, noting: "We regret to inform you that there is no coverage for your loss of income because there is no direct physical loss to your building or business personal property." (Ex. E).

125.    The Remington and Hutch Denials are the same and/or substantially the same as one another and, upon information and belief, as denials sent to other insureds with the same or similar coverage (the "Coverage Denial").

126.    Upon information and belief, each and every denial letter sent by Defendants to their insureds relating to the Virus, CV-19, or the CA Orders was the same in form and substance to the Hutch Denial, Remington Denial, and Coverage Denial.

127.    The Coverage Denial received by Plaintiffs sets forth Defendants' analysis of why the "Ultrapack Policy" and/or Ultrapack Plus Commercial Property Coverage Part issued in New York do not afford coverage for losses related to the Virus, CV-19, or the CA Orders.

128.    The Coverage Denial does not reference any of the facts of Plaintiffs' loss.

129.    Defendant Erie IC, upon information and belief at the direction of Defendant EIG, has refused to make payment to Plaintiffs for damages resulting from the Loss which constitutes a breach of the Policy.

130.    Defendant Eire IC's refusal to cover the Loss is erroneous and unsupported by the plain language of the Policy.

131.    As such, Defendant Erie IC owes Plaintiffs insurance coverage and benefits under the Policy for the Loss, and there is no valid basis for its refusal to issue the same.

132.    Plaintiffs continue to be damaged by Defendant Erie IC's refusal to issue the full amounts due and owing under the Policy.

133.    Defendants have denied coverage to Plaintiffs and other policyholders for losses related to the Virus, CV-19, and/or the CA Orders based on their policy interpretation as set forth in the DFS Response and the "Coverage Denial."

134.    Upon information and belief, Defendants made coverage decisions concerning policyholder claims related to the Virus, CV-19, and the CA Orders without consideration of the unique facts or circumstances of each loss and, rather, adopted a pattern and/or practice to deny such claims.

<u>CLASS ACTION ALLEGATIONS</u>

135.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf itself and a class consisting of:

a.      all policyholders of all-risk commercial property insurance policies issued by any named Defendant, including policyholders of an Ultrapack Policy or a policy that includes or is comprised of Ultrapack Plus Commercial Property Coverage Part" (Form PK-00-02 (Ed. 9-18) CL-0002);

b.      whose policies were in effect for any period of time on or after February 15, 2020, and through the end of the (i) declared emergency period or (ii) prohibitions, limitations, or restrictions of business property use under the CA Orders;

c.      whose policies do not contain the Virus Exclusion or a substantially similar exclusion for a virus as an endorsement; and

d.      who suffered BI Losses or SL Losses as a result of the Virus, CV-19, or the CA Orders, including policyholders that suspended or reduced business operations at the premises covered by their policy (the "Class").

136.    Excluded from the Class are Defendants and their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities as well as counsel and court staff assigned to this case and/or their immediate family members. Plaintiffs reserves the right to amend or modify the Class definition.

137.   FED. R. CIV. P. 23(a)(1) - Numerosity. The Class members are so numerous that joinder of all members is impracticable.   Upon information and belief, Defendants issued thousands of commercial property insurance policies in New York containing provisions for business interruption and related coverage, including the Ultrapack Policy and policies that include the Ultrapack Plus Commercial Property Coverage Part" (Form PK-00-02 (Ed. 9-18) CL-0002).

138.   FED. R. CIV. P. 23(a)(2) - Commonality and Predominance.  Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

    a.    Defendants issued all risk policies to Class members in exchange for premiums paid and received;

    b.    Plaintiff and the Class members had the use of/access to their property and/or the operation of their business impacted by the CA Orders;

    c.    Defendants' position that the presence of a virus or the reduction of a business relating thereto does not constitute direct physical loss of or damage to property;

    d.    Defendants' interpretation of coverage for losses related to the Virus, CV-19, and the CA Orders as set forth in the DFS Response;

    e.    whether Defendants' coverage decision details were uniformly adopted and applied to all policyholder Class members;

    f.    Defendants' knowledge of and failure to adopt the Virus Exclusion in the policies issued to Class members;

    g.    whether the policies issued by Defendants were ambiguous as to coverage for losses arising from the presence of a virus or the limiting or closing of a business to prevent the spread of a virus;

    h.    whether the presence of a person infected with CV-19 at or in the immediate area of an insured premises constitutes a physical loss of or physical damage to property under the policies issued by Defendants;

    i.    whether the closing or limiting of a business to prevent the spread of a virus constitutes a physical loss of or physical damage to property under the policies issued by Defendants; and

   j.  whether New York state laws were violated by the Defendants' acts and/or omissions as alleged herein.

139. FED. R. CIV. P. 23(a)(3) - Typicality. The claims of the proposed Class representatives, Plaintiffs Hutch and Remington, are typical of the claims of the Class members as all Class members were issued the same or substantially similar commercial property insurance policies by Defendants, including Ultrapack Policy or a policy that includes or is comprised of Ultrapack Plus Commercial Property Coverage Part" (Form PK-00-02 (Ed. 9-18) CL-0002), and Plaintiff Hutch, Plaintiff Remington, and members of the proposed class have been similarly affected by Defendants' wrongful acts complained of herein, including Defendants' position that the presence of a virus and/or the closing or limiting of a business to prevent the spread of a virus are not physical loss or damage to property.

140. FED. R. CIV. P. 23(a)(4) - Adequacy of Representation. The proposed Class representatives, Plaintiffs Hutch and Remington, will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in matters involving first party insurance coverage as well as class actions. Plaintiff has no interests which conflict with the Class. Plaintiff and its counsel will vigorously prosecute this action, and the interests of the Class will be fairly and adequately protected.

141. FED. R. CIV. P. 23(b)(3) - Superiority. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Upon information and belief, Defendants have issued in excess of 1,000 commercial property policies in New York and it is undisputed that the Virus, CV-19, and/or the CA Orders have impacted every business in New York, including every policyholder in the proposed Class.

142.     The damages suffered by individual class members will vary and may be relatively small in comparison to the costs of litigation.  As such, the expense and burden of individual litigation could make it impossible for Class members to individually redress the wrongs done to them. There will be no unusual difficulty in the management of this action as a class action.

143.     Additionally, the Class should be certified under CPLR § 901 because: (a) the prosecution of separate actions by the individual Class members would create a risk of varying results and incompatible/inconsistent standards of conduct for Defendants; (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

FIRST CAUSE OF ACTION
Breach of Contract and Declaratory Relief

144.     Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth and incorporated herein.

145.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the other Class members.

146.     Plaintiffs sustained a physical loss of property, BI Losses, SL Losses, and damages as a result of a covered cause of loss under the Policy.

147.     Covered Causes of Loss under the policies issued by Defendants to Class members include physical loss of property resulting from the Virus, CV-19, and/or the CV Orders.

148.     Defendants had a duty under the Policy to provide coverage for BI Losses, SL Losses, and damages resulting from a covered cause of loss.

149.   Plaintiffs duly notified Defendants of their claim under the Policy, including for business income coverage.

150.   Defendants have refused to pay Plaintiffs' BI Losses, SL Losses, and damages.

151.   Defendants have refused to pay BI Losses, SL Losses, and damages arising from or relating to the Virus, CV-19, and/or the CA Orders.

152.   Defendants' failure and refusal to make payments to Plaintiffs for the BI Losses, SL Losses, and other damages constitutes a breach of the Policy.

153.   Defendants' failure and refusal to make payments to Plaintiffs and other Class members for BI Losses, SL Losses, and damages pursuant to the terms of the policies constitutes a breach of contract.

154.   Defendants' conduct has been unreasonable.

155.   Defendants have unreasonably obstructed and prevented Plaintiffs and other Class members from receiving prompt payment for the insurance benefits to which they are entitled under the Policy.

156.   Defendants breached their duty and obligations of good faith and fair dealing.

157.   Plaintiffs and the other Class members have been damaged by Defendants' wrongful conduct, including without limitation suffering extra-contractual consequential damages as a result of Defendants' failure to act promptly and in good faith.

158.   It was reasonably foreseeable and contemplated by the parties, at the time the Policy was issued and/or renewed, that the failure to properly investigate a loss/occurrence and the failure to promptly provide coverage and pay insurance benefits under the Policy would negatively and adversely affect a policyholder's business operations, including causing delays thereto, thereby forcing Plaintiffs and other Class members to incur additional business interruption losses,

attorneys' fees, and litigation related expenses.

159.   Plaintiffs and members of the proposed Class have been damaged by Defendants' wrongful conduct, including that they have sustained foreseeable extra-contractual consequential damages, including business interruption losses, attorneys' fees, and litigation related expenses.

160.   As a result of Defendants' breach and wrongful conduct, Plaintiffs and Class members are entitled to judgment providing declaratory relief of their rights under the Policy, determining that the presence of the Virus causes physical loss of or damage to property as a matter of law.

161.   As a result of Defendants' breach and wrongful conduct, Plaintiffs and Class members are entitled to judgment providing declaratory relief of their rights under the Policy, determining that Defendants are liable to Plaintiff and Class members for breach of contract, and that Plaintiff and Class members have been damaged and are entitled to judgment against Defendants in an amount to be determined at trial, plus interest.

<u>SECOND CAUSE OF ACTION</u>
New York General Business Law § 349

162.   Plaintiffs repeat and re-allege the preceding paragraphs as if fully set forth and incorporated herein.

163.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the other Class members.

164.   Defendants' statements in the DFS Response sent to policyholders were inaccurate and misleading.

165.   Defendants DFS Response sent to policyholders included the express representation that "**[c]overage considerations depend on the particular facts and circumstances presented, as well as policy provisions and individual coverages that may be**

**part of your particular policy.**" (Ex. H (emphasis in original)).

166.    Defendants did not make coverage determinations based "on the particular facts and circumstances presented[.]"

167.    Defendants made a uniform decision to deny all claims arising from the Virus, CV-19, and/or the CA Orders irrespective of the factual circumstances or policy provisions of individual policyholders.

168.    Upon information and belief, Defendants' made the uniform decision to deny all claims arising from the Virus, CV-19, and/or the CA Orders irrespective of the factual circumstances or policy provisions of individual policyholders before issuing the DFS Response.

169.    Defendants expressly misrepresented to their policyholders that coverage decisions would be made on a case-by-case basis given the factual circumstances or policy provisions of individual policyholders.

170.    Defendants' instructions to insurance agents and policyholder representatives that the coverages under its policies do not apply in the case of a virus were inaccurate and misleading.

171.    Defendants' inaccurate and misleading statements were relied on by policyholders and induced them to refrain from filing claims with Defendants.

172.    Defendants' failure to reasonably investigate the BI Losses and SL Losses as well as their refusal to pay insurance benefits through the present has, at the least, been in reckless and/or grossly negligent disregard of their obligations under each Policy issued to Plaintiffs and other Class members.

173.    Defendants' actions are consumer oriented inasmuch as the Policy consists of standard policy forms created, maintained, and issued by Defendants as a group.

174.     Defendants' actions are consumer oriented inasmuch as the disclaimer letter issued to Plaintiff consisted of a generic, predetermined analysis that all claims relating to the Virus, CV-19, and the CA Orders were denied.

175.     Defendants pre-determined that as a general rule that their standard form policies of insurance issued to insureds in New York State simply do not afford coverage for losses stemming from the Virus, CV-19, and the CA Orders, irrespective of the fact that the policies do not contain a Virus Exclusion.

176.     Illustrating the predetermined nature of Defendants' coverage decisions, neither the denial letter nor the DFS Response reference or contain an analysis of the facts of Plaintiffs' loss.

177.     Further illustrating the predetermined nature of Defendants' coverage decisions is the fact that Defendants, upon information and belief, created a generic policy language enclosure which is a boilerplate analysis of the policy so that the disclaimer letters could be generated in a mass-produced, streamlined manner.

178.     Upon information and belief, each of the Defendants has received claims arising from or related to the Virus, CV-19, and the CA Orders from other insureds with policies that are the same as substantially similar to the Hutch and Remington Policies.

179.     Upon information and belief, each of the Defendants have issued disclaimer letters that are the same as, or substantially similar to, the disclaimer letters that were issued to Plaintiffs in this case.

180.     Defendants' conduct in pre-deciding their coverage position for all, or substantially all, claims from insureds in New York State stemming from the Virus, CV-19, and the CA Orders was materially misleading.

181.    Defendants, by their agents and employees, have perpetuated and continued perpetuating a scheme by which its insureds are deprived of the full benefit of their policies, regardless of the fact that the Class's policies do not contain the Virus Exclusion or any exclusions referencing virus-related losses.

182.    Upon information and belief, Defendants have instituted a practice, policy, or procedure by which Defendants intend to deny all, or substantially all, claims stemming from the Virus, CV-19, and the CA Orders.

183.    Defendants' practice, policy, or procedure was surreptitiously and purposefully made without notice or disclosure to Defendants' customers, potential customers, or the public at large, and indeed made despite express representations to the public to the contrary.

184.    Defendants' practice, policy, or procedure of not covering claims stemming from viruses is not disclosed within the subject insurance policies, because the policies do not contain the Virus Exclusion or a similar exclusion for viruses, despite the fact that Defendants are familiar with the Virus Exclusion.  Therefore, Plaintiffs and the public at large have been misled in a material respect.

185.    Defendants' practice of denying all, or substantially all, claims stemming from the Virus, CV-19, and the CA Orders was not disclosed to its policyholders until after they had submitted a claim under a policy.  Therefore, Plaintiffs and the public at large who have obtained such policies from the Defendants have been misled in a material respect.

186.     The aforementioned public-oriented conduct exercised by Defendants is a regular business practice, policy, or procedure.

187.    Defendants' aforesaid practice, policy, or procedure is willful, intentional and malicious with the ultimate intent and effect of depriving its insureds of the scope and amount of

coverage which they paid and bargained for.

188.    The aforesaid actions of the Defendants constitute a violation of § 349 of the New York General Business Law for which Plaintiffs and the Class are entitled to treble damages up to the sum of $1,000.00 per violation, plus reasonable attorneys' fees.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully requests that the Court:

a.      Enter an Order certifying the proposed Class, as requested herein, designating Plaintiffs as Class representative, and appointing Plaintiffs' undersigned attorneys as Counsel for the Class;

b.      Entering judgment on the First Cause of Action in favor of Plaintiffs and the Class members as follows:

1.      Determining and declaring that the Virus causes, and the presence of the Virus constitutes, direct physical loss of or damage to property;

2.      Determining and declaring that losses sustained by Plaintiffs and Class members arising from and relating to the Virus, CV-19 and/or the CA Orders are insured losses covered under the Policies issued by Defendants;

3.      Determining and declaring that Defendants are, jointly and severally, obligated to pay the full amount of BI Losses, SL Losses, and other coverage benefits provided for under the Policies issued to Plaintiffs and the Class members with respect to losses arising from or relating to the Virus, CV-19, and/or the CA Orders; and

4.      Determining liability in favor of Plaintiffs and Class members against Defendants, jointly and severally, for breach of contract and awarding damages for losses covered under the Policies in an amount to be determined at trial, plus interest.

c.      Entering judgment on the Second Cause of Action in favor of Plaintiffs and Class members against all Defendants, jointly and severally, in an amount to be determined at trial but not less than treble damages up to the sum of $1,000.00 per violation, plus interest and reasonable attorneys' fees;

d.      Ordering Defendants to pay the legal fees of attorneys' fees and costs of suit;

e.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

f.      Ordering such other and further relief as may be just and proper.


Dated:   Buffalo, New York
         August 12, 2020

DUKE HOLZMAN PHOTIADIS & GRESENS LLP

s/ *Christopher M. Berloth*

By:   _____
      Gregory P. Photiadis
      Charles C. Ritter, Jr.
      Christopher M. Berloth
      *Attorneys for Plaintiffs*
      *Hutch & Associates, Inc. &*
      *Delaware Restaurant Holdings, LLC*
      701 Seneca Street, Suite 750
      Buffalo, New York 14210
      Tel: (716) 855-1111
      gpp@dhpglaw.com
      critter@dhpglaw.com
      cberloth@dhpglaw.com