UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HUTCH & ASSOCIATES, INC. d/b/a
HUTCH'S RESTAURANT and DELAWARE
RESTAURANT HOLDINGS, LLC d/b/a
REMINGTON TAVERN & SEAFOOD
EXCHANGE,

Plaintiffs,

vs.

ERIE INSURANCE COMPANY OF NEW
YORK, ERIE INDEMNITY COMPANY d/b/a
ERIE INSURANCE GROUP, ERIE
INSURANCE COMPANY, ERIE
INSURANCE PROPERTY & CASUALTY
COMPANY, ERIE INSURANCE
EXCHANGE, and FLAGSHIP CITY
INSURANCE COMPANY,

Defendants.
_____

Civil Action No. 1:20-cv-00896
_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
RULE 12(B)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ......................................................................... 1

LEGAL ARGUMENT ...................................................................................... 2

I.     LEGAL STANDARD.................................................................... 2

II.    PLAINTIFFS' FIRST CAUSE OF ACTION FOR BREACH OF
       CONTRACT AND DECLARATORY RELIEF FAILS TO STATE A
       CLAIM UPON WHICH RELIEF CAN BE GRANTED ................................ 3

       A.  Plaintiffs' Amended Complaint Fails to Plausibly Allege Direct
           Physical Loss or Damage Necessary to State a Claim for Business-
           Income or Extra-Expense Coverage.................................................... 7

       B.  Plaintiffs' Amended Complaint Fails to Allege that Physical Damage
           or Physical Loss Caused its Alleged Damages, Alleging Only that
           Executive Orders Caused its Alleged Damages ................................ 17

       C.  Plaintiffs' Amended Complaint Fails to Plausibly Allege Coverage
           Under the Policies' Civil Authority Provision ....................................... 20

III.   PLAINTIFF'S SECOND CAUSE OF ACTION UNDER NEW YORK
       GENERAL BUSINESS LAW § 349 FAILS TO STATE A CLAIM UPON
       WHICH RELIEF CAN BE GRANTED ..................................................... 23

CONCLUSION ........................................................................................... 29

i

## TABLE OF AUTHORITIES

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................. 1

**State Statutes**

New York General Business Law § 349 ........................................ 12

New York Insurance Law § 2601 ................................................. 28

**Cases**

*10E, LLC v. Travelers Indemnity Co. of Connecticut*, No. 2:20-cv-04418-SVW-AS (C.D. Cal. August 28, 2020) ................................................. 18

*54th Street Ltd. Partners, L.P. v. Fidelity & Guar. Ins. Co.*, 306 A.D.2d 67 (1st Dept. 2003) ................................................................. 21

*866 E. 164th St., LLC v. Union Mut. Fire Ins. Co.*, No. 16-CV-03678 (SN), 2017 WL 4444334 (S.D.N.Y. Oct. 3, 2017) ....................................... 28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................... 2

*Bartlett v. Nationwide Mut. Fire Ins. Co.*, 2013 WL 623497 (W.D.N.Y. 2013) ............... 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................ 2

*Chambers v. Time Warner, Inc.,* 282 F.3d 147 (2d Cir. 2002) ......... 3

*Cleland Simpson Co. v. Firemen's Ins. Co. of Newark*, 392 Pa. 67 (1958) .................. 22

*Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) ............. 29

*Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000) ............ 2

*Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686 (5th Cir. 2011) ............ 14

*Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE (W.D. Texas, August 13, 2020) .......................................................... 14

*Faber v. Metro. Life Ins. Co.*, 648 F.3d 98 (2d Cir. 2011) .............. 2

Mura&Storm, pllc ● 930 Rand Building ● 14 Lafayette Square ● Buffalo, New York  14203
(716) 855-2800 ● fax (716) 855-2816

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB (Michigan Cir. Ct. 2020).... 15

*H&H Envtl. Sys., Inc. v. Evanston Ins. Co.*, 2019 WL 1129434 (W.D.N.Y. 2019)......... 24

*Harris v. Mills,* 572 F.3d 66, 71 (2d Cir. 2009) ............................................................... 2

*Harry's Cadillac–Pontiac–GMC Truck Co., Inc. v. Motors Ins. Corp.,* 126 N.C.App. 698
(Ct.App.N.C.1997) ............................................................................................................ 8

*Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th
Cir. 2006) ........................................................................................................................ 15

*Howard Stores Corp. v. Foremost Ins. Co.,* 82 A.D.2d 398 (1st Dept. 1981), *affd.* 56
N.Y.2d 991 (1982) ............................................................................................................ 8

*Interested Underwriters at Lloyd's of London Subscribing to Policy # 9913610118
v. Church Loans & Invs. Trust*, 432 F. Supp. 2d 330 (S.D.N.Y. 2006).......................... 23

*Kalyanaram v. American Ass'n of University Professors at New York Institute of
Technology, Inc.,* 742 F.3d 42, 44 n. 1 (2d Cir. 2014) ..................................................... 3

*Kraatz v. USAA Cas. Ins. Co.*, 2017 WL 876187 (W.D.N.Y. 2017) .............................. 23

*Long v. Corning Inc.*, 2020 WL 1467278 (W.D.N.Y. 2020)............................................. 2

*MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997) ............. 25

*Malube, LLC v. Greenwich Ins. Co.*, No. 20-22615-Civ-Williams/Torres
(S.D. Fla. Aug. 26, 2020).............................................................................................. 19

*Mama Jo's, Inc. v. Sparta Ins. Co.*, 1:17-cv-23362-KMM, 2020 WL 4782369
(11th Cir. August 11, 2020) ........................................................................................... 13

*Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130 (Ohio Ct. App. 2008) ...... 13

*Morgan Stanley Group, Inc. v. New England Ins. Co.*, 225 F.3d 270 (2d Cir. 2000) ....... 7

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
17 F. Supp. 3d 323 (S.D.N.Y. 2014)........................................................................... 7, 8

*N.Y. Univ. v Continental Ins.*, 87 N.Y.2d 308, 317 (1995) ........................................... 28

*Rose's 1, LLC v. Erie Insurance Exchange*, Civil Case No. 2020 CA 002323 B
(Superior Ct., Dist. Of Columbia, August 6, 2020)....................................................... 16

Mura&Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • fax (716) 855-2816

*Ross v. Hartford Lloyd Ins. Co.*, 2019 WL 2929761 (N.D. Tex. July 4, 2019)............... 15

*Roundabout Theatre Co. v. Cont'l Cas. Co.,* 302 A.D.2d 1 (1st Dept. 2002)............. 7, 8

*Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*, 2020 WL 1445874 (W.D.N.Y. 2020) . 7

*Social Life Magazine, Inc., v. Sentinel Insurance Company Limited*, 20 Civ. 3311 (S.D.N.Y. 2020)........................................................................................... 10

*United Airlines, Inc. v. Ins. Co. of State of PA*, 385 F.Supp.2d 343 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006) ................................................................... 15, 21

*Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x. 569 (6th Cir. 2012) ......... 13

*Yak v. Bank Brussels Lambert,* 252 F.3d 127 (2d Cir. 2001) .......................................... 3

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK  14203
(716) 855-2800 • FAX (716) 855-2816

## PRELIMINARY STATEMENT

This memorandum of law is submitted along with the declaration of Roy A. Mura, Esq. (the "Mura Declaration") in support of the pre-answer motion of the defendants for dismissal of the plaintiffs' amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) based on the amended complaint's failure to state a claim upon which relief can be granted.

This is an action seeking coverage under commercial property insurance policies for business income losses and expenses allegedly relating to the government-ordered closure of plaintiffs' restaurants due to the COVID-19 pandemic. The amended complaint alleges: that defendants Erie Insurance Group ("EIG") and Erie Insurance Company ("Erie IC") issued two commercial property insurance policies to the two plaintiffs; that the plaintiffs submitted claims to "the Defendants" under those two policies for business income losses allegedly sustained due to the COVID-19 pandemic; and that defendant Erie IC breached those policies by wrongfully denying coverage for the plaintiffs' claims.

The relevant policy language may be found in the accompanying Mura Declaration and its exhibit.

Identical to its original version, the amended complaint asserts two causes of action: the first styled as one for "Breach of Contract and Declaratory Relief" and the second alleging that defendants violated New York General Business Law § 349.

As set forth below, the amended complaint fails to allege sufficient facts to maintain a cause of action for breach of contract and/or declaratory relief related to the

1

subject coverage dispute. Moreover, the amended complaint fails to allege sufficient facts to maintain a cause of action under General Business Law § 349. For these reasons, the plaintiffs' amended complaint must be dismissed as against the defendants in its entirety.

## **LEGAL ARGUMENT**

### I.      **LEGAL STANDARD**

As recently stated by this Court in *Long v. Corning Inc.*, (No. 19-CV-6422-FPG, 2020 WL 1467278 [W.D.N.Y. Mar. 26, 2020]):

> [a] party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing such a motion, a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' *Id.* at 679.

The "plausibility standard" applicable to a Rule 12(b)(6) motion to dismiss "is guided by `[t]wo working principles.'" *Harris v. Mills,* 572 F.3d 66, 71 (2d Cir. 2009) (citing *Twombly,* 550 U.S. at 544 (2007), and quoting *Iqbal,* 556 U.S. at 678). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72

MURA & STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK  14203
(716) 855-2800 • FAX (716) 855-2816

(quoting *Iqbal,* 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will… be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal,* 556 U.S. at 679). Unless the plaintiff pleads "enough facts to state a claim that is plausible on its face" so as to "nudge[ ] their claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), "a court may consider the complaint as well as 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." *Kalyanaram v. American Ass'n of University Professors at New York Institute of Technology, Inc.,* 742 F.3d 42, 44 n. 1 (2d Cir. 2014) (quoting *Yak v. Bank Brussels Lambert,* 252 F.3d 127, 130 [2d Cir. 2001]). A court may also consider "matters of which judicial notice may be taken, [and] documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Id.* (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 [2d Cir. 2002]).

As set forth below, the defendants respectfully submit that they have shown on this motion that, even accepting as true all of the factual allegations contained in the plaintiffs' amended complaint and drawing all reasonable inferences in the plaintiffs' favor, the amended complaint does not contain sufficient factual matter to state a claim for relief that is plausible on its face. As such, the plaintiffs' amended complaint must be dismissed.

## II.   PLAINTIFFS' FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT AND DECLARATORY RELIEF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

3

The plaintiff's amended complaint sets forth a first cause of action styled as "Breach of Contract and Declaratory Relief" (Exhibit A to Mura Declaration, ECF Doc. 9, hereinafter "Amended Compl." at ¶ 144).

In short, the amended complaint alleges that the plaintiffs sustained "physical loss of property, BI Losses, SL Losses, and damages as a result of a covered cause of loss under" policies that EIG and Erie IC issued to the plaintiffs (Amended Compl. ¶ 146), that this alleged "covered cause of loss" resulted from "the Virus, CV-19, and/or the CV Orders" (Amended Compl. ¶ 147), and that defendants have refused to pay for the plaintiffs' alleged "BI Losses, SL Losses, and damages" under the subject policies. Amended Compl. ¶ 150.

The plaintiffs characterize their claims under the policies as "BI Losses" – "coverage for business interruption, the loss of business income, extended business income, loss based on the actions of civil authorities to limit access to property, property loss, extra expense loss, and dependent property loss" (Amended Compl. ¶ 5) and "SL Losses" – "coverage for reimbursement of costs and expenses incurred as a result of complying [with subsections b. and I. of YOUR DUTIES AFTER A LOSS]." Amended Compl. ¶ 6.

However, regardless of the section of the subject policies under which the plaintiffs attempt to invoke coverage, the plaintiffs' amended complaint acknowledges and concedes that the subject policies only provide coverage if there has been "direct physical loss" to property:

> Under "SECTION II – PERILS INSURED AGAINST" under
> the sub-heading "Covered Causes of Loss" of the Ultrapack

4

Plus Commercial Property Coverage Part, the Policy provides that "[t]his policy insurers against direct physical 'loss', except 'loss' as excluded or limited in this policy."

Amended Compl. ¶ 29.

Any claim for coverage under the subject policies, whether for coverages that the plaintiffs have labeled "BI Losses" or "SL Losses," first and foremost, require the existence of "direct physical loss" to property.

Further, the plaintiffs' amended complaint acknowledges that EIG and Erie IC denied payment of their claims because the plaintiffs did not sustain a "direct physical loss":

> By letter dated March 30, 2020, Defendants EIG and Erie IC issued a written coverage denial to Plaintiff Hutch, noting: "We regret to inform you that there is no coverage for your loss of income because there is no direct physical loss to your building or business personal property." (Ex. D).

Amended Compl. ¶ 123.

> By letter dated March 31, 2020, Defendants EIG and Erie IC issued a written coverage denial to Plaintiff Remington, noting: "We regret to inform you that there is no coverage for your loss of income because there is no direct physical loss to your building or business personal property." (Ex. E).

Amended Compl. ¶ 124.

In response to this apparent recognition, the plaintiffs' original and amended complaints allege that mere exposure to or "presence of the Virus constitutes direct physical loss and/or damage to property" (Amended Compl. ¶ 68) and the mere "presence of the Virus and persons with CV-19 caused direct physical loss of or damage to the covered property… as well as to property in the immediate area of such covered property." Amended Compl. ¶ 71.

MURA&STORM, PLLC ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK  14203
(716) 855-2800 ● FAX (716) 855-2816

As such, whether the plaintiffs can maintain their breach of contract cause of action is entirely dependent on two issues: (1) whether the amended complaint's allegation of the mere "presence of the Virus" or the mere "presence of the Virus and persons with CV-19" on property suffices to allege the requisite direct physical loss or damage to property for coverage to exist under the policies; and (2) whether the amended complaint alleges that virus-caused direct physical loss or damage to property either resulted directly in the partial or total interruption of plaintiffs' businesses or caused a dangerous physical condition that civil authority responded to by prohibiting access to nearby property.

Notably, the plaintiffs' amended complaint does not allege any direct physical loss or damage to property other than the alleged "presence of the Virus" on property.  In effect, the amended complaint alleges that the presence of something within property equates with the loss or damage of that property. The amended complaint does not allege that plaintiffs' property or anyone else's property actually sustained a deleterious, damaging or destructive change to property from the novel coronavirus.  As such, where the presence of a virus within or on property does not, in and of itself, qualify as a direct physical loss or damage, as a matter of law, the plaintiffs have failed to allege facts sufficient to maintain their breach of contract cause of action.

The amended complaint also fails to allege that virus-caused direct physical loss or damage to property either resulted directly in the partial or total interruption of plaintiffs' businesses or caused a dangerous physical condition that civil authority responded to by prohibiting access to nearby property.  For this additional but separate

reason, the amended complaint fails to state a valid claim for income protection coverage under the subject insurance policies.

A.   Plaintiffs' Amended Complaint Fails to Plausibly Allege the Direct Physical Loss or Damage Necessary to State a Claim for Business-Income or Extra-Expense Coverage

Under the policies' Insuring Agreement, Erie IC need only "pay for **direct physical "loss" of or damage to** Covered Property at the premises described in the 'Declarations' caused by or resulting **from a peril insured against**." ECF Doc. 9-1, at 10 and 13, and Doc. 9-2, at 16 and 19 (emphasis added). Under the Perils Insured Against Clause, in turn, a "peril insured against" means "**direct physical 'loss'** unless the loss is excluded or limited." *Id*. at 13 and 19 (emphasis added). Read together, as they must be, these policy terms and provisions emphasize a threshold requirement for direct physical damage to property at the insured premises. Plaintiffs' amended complaint fails to plead any facts describing any direct physical loss or damage to property and hence the amended complaint fails to state a claim.

As recently stated by this Court in *Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*, No 6:17-CV-06234 EAW, 2020 WL 1445874 (W.D.N.Y. Mar. 25, 2020):

> It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss. *Morgan Stanley Group, Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000). This is true even for "all-risk" policies—"labeling the policy as 'all-risk' does not relieve the insured of its initial burden of demonstrating a covered loss under the terms of the policy." *Roundabout Theatre Co. v. Cont'l Cas. Co.,* 302 A.D.2d 1, 6, 751 N.Y.S.2d 4 (1st Dept. 2002). **Under New York law, the phrase "risks of direct physical loss" has been interpreted to mean "some form of actual, physical damage" to the insured property**. *Newman Myers Kreines Gross Harris, P.C. v. Great*

*N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (emphasis added).

District Judge Elizabeth A. Wolford recognized in *Satispie* that when a commercial property insurance policy requires an insured to prove a "direct physical loss" in order to recover under the policy, this means that the insured must allege and show "some form of actual, physical damage" to property.  The *Satispie* court relied on previous New York state and federal court decisions, which uniformly hold that when the phrase "direct physical loss" is used in a policy such as the plaintiffs' in this case, the insured must allege and prove that some actual, physical damage occurred to property.

For example, in *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 7 (1st Dept. 2002), the New York appellate court held that:

> the only conclusion that can be drawn is that the business interruption coverage is limited to losses involving physical damage to the insured's property (*see Howard Stores Corp. v. Foremost Ins. Co.,* 82 A.D.2d 398, 401, 441 N.Y.S.2d 674, *affd. for reasons stated* 56 N.Y.2d 991, 453 N.Y.S.2d 682, 439 N.E.2d 397 [no coverage under terms of policy for business interruption loss at two stores where no physical damage occurred]; *Harry's Cadillac–Pontiac–GMC Truck Co., Inc. v. Motors Ins. Corp.,* 126 N.C.App. 698, 486 S.E.2d 249 [Ct.App.N.C.1997] [no business interruption coverage where no "direct physical loss" to premises under terms of policy; loss occurred due to inaccessibility of plaintiff's dealership due to snowstorm][.]

Similarly, in *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014), the court held that:

> The critical policy language here—"direct physical loss or damage"—similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage. Newman Myers simply cannot show any such loss or damage to the 40 Wall Street Building as a result of either (1) its

8

inability to access its office from October 29 to November 3, 2012, or (2) Con Ed's decision to shut off the power to the Bowling Green network. The words "direct" and "physical," which modify the phrase "loss or damage," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure.

Notably, as stated in *Newman*, the court clarified that not only must there be some form of "actual, physical" damage to property, but it must be "actual, demonstrable harm of some form to the premises itself" rather than the "forced closure of the premises for reasons exogenous to the premises themselves[.]"

As stated above, the plaintiffs have seemingly taken the position that the mere "presence of the Virus and persons with CV-19" on property was, in and of itself, "actual, physical damage" to property. Amended Compl. ¶ 71.  The amended complaint alleges nothing more than that "Plaintiffs' Premises, personal property, and dependent property: (a) were exposed to the Virus, (b) had the Virus or persons with CV-19 present at their respective locations, and/or (c) could no longer be used or operated due to orders of civil authorities issued in response to the Virus and CV-19." Amended Compl. ¶ 63.

However, such allegations, even if accepted as true, do not contain sufficient factual matter to state a facially plausible claim for coverage under the subject policies, where the policies require "direct physical loss" to property. The mere alleged presence of a virus on property or alleged exposure of that property to a virus does not qualify as damage caused by "direct physical loss or damage" to that property as that term has been interpreted by the New York state and federal courts, as set forth above.

9

Significantly, several United States District Courts have already found that the alleged presence of the novel coronavirus on property does not, in and of itself, constitute direct physical loss or damage to property sufficient to trigger business interruption insurance.

On May 14, 2020, United States District Court Judge Valerie E. Caproni heard oral argument on plaintiff's application by order to show cause for a preliminary injunction in *Social Life Magazine, Inc., v. Sentinel Insurance Company Limited* (20 Civ. 3311 [VEC] [SDNY]), another business interruption loss case stemming from the COVID-19 pandemic. The plaintiff-insured in that case sought coverage for business income losses it allegedly sustained due to the government-ordered March 2020 closure of its printing business. At the conclusion of that oral argument, Judge Caproni denied plaintiff's application for a preliminary injunction, finding, in effect, there to be no likelihood of success of the plaintiff's coverage claim. The oral argument was transcribed and is attached hereto for this Court's reference as **Exhibit A** (Civ. No. 1:20-cv-03311 ECF Doc. 26-1).

The oral argument of that application included these exchanges between Judge Caproni and Social Life Magazine's counsel, Mr. Fischbarg:

> THE COURT: Let me ask you something. First off, I want to start with basics. Do you agree that New York law applies?
> MR. FISCHBARG: Yes.
> THE COURT: All right. So the -- is it the Roundabout Theatre case?
> MS. GORDON: Yes, your Honor.
> THE COURT: First Department case?
> MS. GORDON: Yes, your Honor. This is Ms. Gordon on behalf of Sentinel.

10

THE COURT: Thank you.  Mr. Fischbarg, it would seem to me that the Roundabout case is a real problem for your position. Would you like to explain to me why it doesn't preclude your claim?

MR. FISCHBARG: Yes. That case applies to off-site property damage rendering the premises at issue inaccessible. So in this case, you don't have off-site property damage. You have on-site property damage.

THE COURT: What is the damage? There is no damage to your property.

MR. FISCHBARG: Well, the virus exists everywhere.

THE COURT: It damages lungs. It doesn't damage printing presses (Exhibit A, at 4-5).

*  *  *  *  *

MR. FISCHBARG: Mold spores, bacteria, virus, all those are physical items which damage whatever they are on, whatever they land on. And in this case, the virus, when it lands on something and you touch it, you could die from it. So --

THE COURT: That damages you. It doesn't damage the property (Exhibit A, at 6).

*  *  *  *  *

THE COURT: But it's not. This is different. The virus is not specifically in your property that is causing damage. It is everywhere.  The Legionnaire example is very different. Because it's not like Legionnaire is running rampant throughout the city, and therefore your office building can get closed. It is that the Legionnaire bacteria is in that building causing –

MR. FISCHBARG: Yes.

THE COURT: -- that building to be shut down.

MR. FISCHBARG: Yes. Yes.  So this virus is everywhere, including this office in particular, this office. In other words, they just did a random survey of people going into a grocery store in New York, and 20 percent tested positive. So, Judge, that's just a one-sample test. So if the infection rate in New York City is 20 percent, then the virus is literally everywhere. So if it –

11

THE COURT: That's what --

MR. FISCHBARG: -- is --

THE COURT: That is what has caused the damage is that the governor has said you need to stay home. It is not that there is any particular damage to your specific property.

MR. FISCHBARG: Well, okay, that's –

THE COURT: You may not even have the virus in your property (Exhibit A, at 7-8).

The court further discussed the distinction between cases where some actual, physical damage occurred to property and the *Social Life Magazine* case where:

…there is nothing equivalent here. [The plaintiff] can go to his premises. There is no ammonia or mold or anything in the air that's not going to allow him on to the property. In fact, the governor's orders explicitly allow him to go to the property and get his mail or do routine business functions. The only rule is that he has to stay six feet apart from other people. So those cases are entirely distinguishable. Exhibit A, at 12, lines 4-11.

In denying plaintiff's application for a preliminary injunction, Judge Caproni stated:

I feel bad for your client. I feel bad for every small business that is having difficulties during this period of time. **But New York law is clear that this kind of business interruption needs some damage to the property to prohibit you from going.** You get an A for effort, you get a gold star for creativity, but this is just not what's covered under these insurance policies.
So I will have a more complete order later, but your motion for preliminary injunction is going to be denied.

Exhibit A, at 15, lines 1-18 (emphasis added).

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

Before Judge Caproni could issue her written decision and order, however, on May 22, the court signed plaintiff's voluntary dismissal of its action. Civ. No. 1:20-cv-03311 ECF Doc. 30.

As stated by Judge Caproni, "New York law is clear that this kind of business interruption" – meaning coverage that requires direct physical loss – "needs some damage to the property" and allegations that "the virus is everywhere" is "just not what's covered under these insurance policies."[1]

There is no meaningful distinction between the *Social Life Magazine* case and the present case. The plaintiff in this matter seeks coverage under various provisions of the subject policies, all of which require "direct physical loss" to property, either the plaintiffs' property, or property of others within one mile of the plaintiffs' premises. Similar to the plaintiff in *Social Life Magazine*, the plaintiffs herein have failed to allege facts that fall within coverage by failing to allege damage caused by direct physical loss to property.

As recognized by Judge Caproni, the mere presence of the novel coronavirus in an area does not constitute actual, direct physical loss or damage to property within the meaning of a commercial insurance policy's business interruption

---

[1]     Indeed, even if the complaint in this matter alleged that the virus was actually on surfaces within Plaintiffs' premises rather than only alleging "exposure" or "presence" of the virus to property, it would not state a plausible claim for relief for the additional reason that viral particles can easily be cleaned from the property with Clorox wipes or other ordinary household cleaning products. Numerous courts have held—just as in *Social Life Magazine*—that invisible substances that harm people but can be cleaned off surfaces do not cause physical injury. *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x. 569 (6th Cir. 2012) (requirement of "direct physical loss or damage" not met where presence of bacteria in air conditioning system did not cause tangible damage to insured premises"); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130 (Ohio Ct. App. 2008) (holding that the insurance policy's requirement of "physical injury" required harm to the insured house that "adversely affect[ed] the structural integrity of the house" and that, therefore, the insurance policy did not afford coverage for mold staining that did not affect the structure of house). *See also Mama Jo's, Inc. v. Sparta Ins. Co.*, 1:17-cv-23362-KMM, 2020 WL 4782369 at *8 (11th Cir. August 11, 2020) (restaurant that merely needed to be cleaned and painted did not suffer "a 'loss' which is both 'direct' and 'physical'").

coverage. Under the above-discussed New York case law, the amended complaint's general allegations that the virus which causes COVID-19 existed somewhere on property at the time the state ordered restaurants to close does not amount to an allegation of direct physical loss or damage to property.

Similarly, on August 13, 2020, Senior United States District Court Judge David Alan Ezra, granted the defendant insurer's Rule 12(b)(6) motion to dismiss the plaintiffs' complaint in *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE (W.D. Texas, August 13, 2020). A copy of the court's Order Granting Defendant's Motion to Dismiss is attached hereto for this Court's convenience as **Exhibit B**.

On its motion and with respect to the issues of direct physical loss, State Farm asserted that the plaintiffs failed to "properly plead direct physical loss to the Properties as Plaintiffs argue that the Orders are the reason for the business interruption claim and fail to show that the Properties have been tangibly "damaged" per se" (Exhibit B, p. 11).

After noting that "the Policies [at issue in that action] are explicit that there has to be an accidental, direct physical loss to the property in question" and agreeing "with Plaintiffs that some courts have found physical loss even without tangible destruction to the covered property" (Exhibit B, pp. 12-13), Judge Ezra held:

> Even so, the Court finds that the line of cases requiring tangible injury to property are more persuasive here and that the other cases are distinguishable. *See Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686 (5th Cir. 2011) (affirming summary judgment and holding that there was no coverage under the civil authority provision of the policy as plaintiffs "failed to demonstrate a nexus between any prior property damage and the evacuation order" when the city issued a mandatory evacuation order prior to the arrival of a

hurricane and plaintiffs allegedly suffered business interruption losses); *United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 134 (2d Cir. 2006) (determining that United could not show that its lost earnings resulted from physical damage to its property or from physical damage to an adjacent property when the government shut down the airport after the 9/11 terrorist attacks). For instance, unlike *Essex Ins. Co.*, COVID-19 does not produce a noxious odor that makes a business uninhabitable. It appears that within our Circuit, the loss needs to have been a "distinct, demonstrable physical alteration of the property." *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) ("The requirement that the loss be "physical," given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." (citation omitted)); *see also Ross v. Hartford Lloyd Ins. Co.*, 2019 WL 2929761, at *6–7 (N.D. Tex. July 4, 2019) ("direct physical loss" requires "a distinct, demonstrable, physical alteration of the property" (citing 10A Couch on Ins. § 148:46 (3d ed. 2010)).) Thus, the Court finds that Plaintiffs fail to plead a direct physical loss.

Exhibit B, pp. 13-15.

Further, two state courts outside of New York have also considered business interruption insurance in the context of the COVID-19 pandemic and have, like *Social Life* and *Diesel Barbershop*, ruled in favor of insurers on this issue.

In *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB (Michigan Cir. Court., July 1, 2020), the court held that an insured's alleged business income losses stemming from Michigan's executive closure orders were not covered where "direct physical loss of or damage to property" was, as in this case, a prerequisite for lost income and extra expense coverage. The court held that the phrase "direct physical loss of or damage to property" required "something with material existence. Something that is

15

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

tangible. Something … that alters the physical integrity of the property." Transcript attached hereto as **Exhibit C**, at 18-19; Zoom hearing video at https://www.youtube.com/watch?v=Dsy4pA5NoPw. The court held that the novel coronavirus did not cause physical damage to the insured's property, and, therefore, did not cause the "direct physical loss of or damage to property" that was necessary to trigger coverage. *See Id*. at 18-20, 23.

Similarly, in *Rose's 1, LLC v. Erie Insurance Exchange*, Civil Case No. 2020 CA 002323 B, 2020 WL 4589206 (D. C. Super. Ct., decided August 6, 2020), the court held that an insured's alleged business income losses stemming from Washington D.C.'s executive orders were not covered where "direct physical loss" was, as in this case, a prerequisite for coverage. That court, citing New York case law, including *Roundabout Theatre Co., supra,* and *Newman Myers*, *supra*, held that the term "'direct loss' implies some form of direct physical change to the insured property" and that there was "no 'direct physical loss' to Plaintiffs." See, Order attached hereto as **Exhibit D** at page 9.

Even when read in the light most favorable to the plaintiffs and accepting without conceding all allegations as true, plaintiffs' amended complaint alleges nothing more than the mere "presence" of the Virus on property (Compl., ¶ 71) and a governmental closure of plaintiffs' businesses to prevent the spread of a virus  (Compl., ¶ 63).  Even if taken as true, these allegations do not establish, under New York law, that plaintiffs could be entitled to coverage under the subject policies. Having failed to allege that the novel coronavirus itself caused direct physical loss by physically damaging property, plaintiffs' complaint fails to state a claim for any of the coverages under the subject policies, all of which require direct physical loss, and must be dismissed.

16

B. <u>Plaintiffs' Amended Complaint Fails to Allege That Physical Damage or Physical Loss Caused Its Alleged Damages, Alleging Only That Executive Orders Caused Its Alleged Damages</u>

Plaintiffs also fail to state a claim for breach of contract because, under the subject policies, coverage only exists where the loss "results" from or is "caused by" a peril insured against. This is clear in the "Insuring Agreement" (Mura Declaration, ¶ 15) as well as the "Income Protection Coverage", "Extra Expense Coverage" and "Civil Authority" coverage sections in "Coverage 3." Mura Declaration, ¶ 16. Because the plaintiffs have admitted that their losses were caused by executive orders, and not directly by any damage to property, the plaintiffs have pleaded themselves out of coverage.

Although the amended complaint in effect alleges that the mere presence of the virus on property constitutes direct physical loss or damage (and, as explained above, it is not), it alleges that plaintiffs' premises and property in the immediate area of plaintiffs' premises "could no longer be used or operated ***due to orders of civil authorities*** issued in response to the Virus and CV-19." Amended Compl. ¶¶ 63 and 64, emphasis added.

In other words, the amended complaint does not allege that the presence of the virus or people with the virus on property caused their alleged losses or damages, but that the orders of civil authorities are what caused their alleged losses or damages. The amended complaint makes this clear when it, again, alleges that the "presence of the Virus" and "persons with CV-19" caused "civil authorities throughout New York to issue orders requiring the suspension of business and/or commercial property, including the property of Plaintiffs and other Class members as well as property in the immediate are of such covered property." Amended Compl. ¶ 72.

Mura&Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York  14203
(716) 855-2800 • fax (716) 855-2816

The amended complaint does not allege that the plaintiffs' damages resulted from or were caused by direct physical loss or damage to plaintiffs' property or nearby property.  It alleges that the plaintiffs' damages were caused by civil authorities in New York ordering the properties to close. The plaintiffs' amended complaint does not set forth *any* connection, let alone a plausible one, that any possible virus on its premises *caused* its purported loss. The plaintiffs squarely blame that loss *on the executive orders*.

Several recent cases arising out of the COVID-19 pandemic and involving substantially similar policy language have dismissed complaints on the basis that insureds failed to state  claim where they pled only that their losses were caused by executive orders and not physical damage to property.

For example, in  *10E, LLC v. Travelers Indemnity Co. of Connecticut*, No. 2:20-cv-04418-SVW-AS (C.D. Cal. August 28, 2020) (Order Granting Defendant's Motion to Dismiss attached hereto as **Exhibit E**), the District Court held that where, as here, the policy required "direct physical loss of or damage to property" the insured failed to state a claim by failing to allege that something other than executive orders are what caused the insured's alleged business interruption losses:

> Plaintiff's [First Amended Complaint] appears to suggest that Plaintiff's business hardships resulted from the physical action of the novel coronavirus itself, which "infects and stays on surfaces of objects or materials … for up to twenty-eight days." Id. at 4. However, Plaintiff does not allege that the virus "infect[ed]" or "stay[ed] on surfaces of" its insured property. Whatever physical alteration the virus may cause to property in general, nothing in the FAC plausibly supports an inference that the virus physically altered Plaintiff's property, however much the public health response to the virus may have affected business conditions for Plaintiff's restaurant. Even if Plaintiff could somehow recover for physical loss or damage to other property, such loss or damage could hardly qualify as

18

"direct." *See MRI Healthcare Ctr.*, 187 Cal. App. 4th at 779 (internal citation and quotation marks omitted) ("[D]irect means [w]ithout intervening persons, conditions, or agencies; immediate.").

Exhibit E, page 7 of 9.

Likewise, in *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-Civ-Williams/Torres (S.D. Fla. Aug. 26. 2020) (Report and Recommendation, attached hereto as **Exhibit F**), Magistrate Judge Torres concluded that where, as here, the policy required "direct physical loss of or damage to property" the insured's claim would be dismissed because its business was impacted by executive orders and plaintiff did not allege that its business was curtailed due to the coronavirus being on the premises:

> Plaintiff still fails to state a claim because – even under an expanded definition – there are no allegations that the restaurant was uninhabitable or substantially unusable. Plaintiff only alleges that the government forced it to close its indoor dining to contain the spread of COVID-19. The government permitted Plaintiff to continue its takeout and delivery services. While Plaintiff never makes clear whether it undertook either of these options, the government never made the restaurant uninhabitable or substantially unusable. Therefore, under no definition of "direct physical loss or damage" has Plaintiff stated a claim where coverage exists under this insurance policy.

Exhibit F, page 21.

Even were this Court to accept plaintiffs' argument that the mere presence of a virus on property physically damages such property, plaintiffs' amended complaint fails to allege that such virus-caused damages are what caused its restaurants to close. Rather, the amended complaint alleges that plaintiffs' premises and property in the immediate area of plaintiffs' premises "could no longer be used or operated ***due to orders of civil authorities*** issued in response to the Virus and CV-19." (Emphasis added.)  For

19

this additional but separate reason, plaintiffs' amended complaint fails to state a valid claim for breach of contract.

C.   <u>Plaintiffs' Amended Complaint Fails to Plausibly Allege Coverage Under the Policies' Civil Authority Provision</u>

Plaintiffs also fail to state a claim that Erie IC breached the policies by denying its claim for coverage under the policies' Civil Authority additional Income Protection coverage. That coverage unambiguously requires that:

1.   a peril insured against caused direct physical loss of or damage to property other than property on the insured's premises;

2.   a civil authority took action to prohibit access to the area immediately surrounding the damaged property as a result of the damage;

3.   the civil authority's action was taken in response to dangerous physical conditions resulting from the damaged property or the continuation of the peril insured against that caused the damage, or the action was taken to enable a civil authority unimpeded access to the damaged property;

4.   the insured's premises were within the area immediately surrounding the damaged property to which the civil authority prohibited access; and

5.   the insured suffered a loss of income, rental income, or extra expenses caused by the action of a civil authority that prohibited access to the insured's premises.

ECF Doc. 9-1 at 13 and ECF Doc. 9-2 at 19. Plaintiff's amended complaint fails to plead *any* of these elements, let alone all of them.

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

To begin with, the allegations in the amended complaint do not satisfy the Civil Authority coverage's requirement of direct physical loss of or damage to property **other than** property on the insured's premises. Not only do plaintiffs fail to identify any other property (and certainly none that was damaged), but the only "damage" complained of is the supposed general presence of the novel coronavirus in New York state, and that is not, as explained above, physical damage. Nor has Plaintiff alleged that any civil authority has taken action so as to have "unimpeded access" to physically damaged (but as of yet unidentified) nearby property.

Moreover, the executive orders upon which plaintiffs rely did not prohibit all access to the Premises, as is required to trigger Civil Authority coverage. *See, 54th Street Ltd. Partners, L.P. v. Fidelity & Guar. Ins. Co.*, 306 A.D.2d 67 (1st Dept. 2003) (holding that, although a civil authority diverted vehicular and pedestrian traffic, the insurance policy's civil authority coverage was not triggered where the civil authority did not deny access to the restaurant). While the Executive Orders required non-essential employers to "reduce[] all non-essential businesses' workers by 100% effective at 8:00 p.m. on March 22 2020" (Amended Compl. ¶ 46.d.), they did not proscribe the business owners, vendors, or delivery personnel, among others, from accessing the property. Access to the property was not, therefore, totally prohibited, let alone from a dangerous physical condition at a nearby property.

What's more, the law requires a *causal connection* between the alleged property damage on a nearby property and the civil authority's action, and is not satisfied where the civil authority acts not *in response to* property damage, but merely to *prevent* some future loss. *See, United Airlines, Inc. v. Ins. Co.*, 385 F.Supp.2d 343, 353 (S.D.N.Y.

21

2005), *aff'd* 439 F.3d 128 (2d Cir. 2006) (holding that civil authority coverage did not exist where the decision to halt operations at Ronald Reagan Washington National Airport in response to the 9/11 attacks was a response to fears of future attacks, and not damage to insured property); *Cleland Simpson Co. v. Firemen's Ins. Co. of Newark*, 392 Pa. 67 (1958) (no civil authority coverage where the Mayor of Scranton declared a state of emergency and shut down businesses to avoid a fire after a storm cut off the city's water supply, because businesses were closed due to the fear of damage, and not actual damage necessary to trigger coverage).

The Civil Authority coverage of plaintiffs' policies confirms this need for a causal nexus by stating that the action by the civil authority must be "*taken in response to* dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage" or to "enable a civil authority to have unimpeded access to the damaged property." ECF Doc. 9-1 at 13; ECF Doc. 9-2 at 19. However, the Executive Orders were on their face designed to prevent the community contact transmissions of COVID-19. The Orders were not, plainly, issued in response to any physical damage but to prevent *future* person-to-person spread of the virus, which is far different from the "peril" insured against and is not a "dangerous physical condition" in any event.

Having failed to allege that a civil authority prohibited access to the plaintiffs' restaurants because there were dangerous physical conditions resulting from past or continuing damage from direct physical loss to the nearby property or that a civil authority took its action to have unimpeded access to the damaged property, plaintiffs' amended complaint must be dismissed.

22

## III.    PLAINTIFFS' SECOND CAUSE OF ACTION UNDER NEW YORK GENERAL BUSINESS LAW § 349 FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The plaintiffs' second cause of action alleges that the defendants violated New York General Business Law § 349, which makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state…." Amended Compl. ¶ 162.

As recognized by this Court, to state a claim for relief under New York General Business Law § 349, a plaintiff must demonstrate "(1) acts or practices that are consumer-oriented; (2) that such acts or practices are deceptive or misleading in a material way; and (3) that [the] plaintiff has been injured by reason of those acts." *Kraatz v. USAA Cas. Ins. Co.*, No. 16-CV-00103-FPG, 2017 WL 876187 at 8 (W.D.N.Y. Mar. 6, 2017), citing *Bartlett v. Nationwide Mut. Fire Ins. Co.*, No. 12-CV-435, 2013 WL 623497, at *2 (W.D.N.Y. Feb. 19, 2013).

"In determining whether an act or practice is consumer-oriented, courts consider three factors: (1) the amount of money at stake, (2) the nature of the contract, and (3) the relative level of sophistication of the parties." *Kraatz*, *supra* 2017 WL 876187 at 8, citing *Interested Underwriters at Lloyd's of London Subscribing to Policy # 9913610118 v. Church Loans & Invs. Trust*, 432 F. Supp. 2d 330 (S.D.N.Y. 2006)

"In considering those factors, "[c]ourts almost uniformly find that disputes between policy holders and insurance companies concerning the scope of coverage are nothing more than private[,] contractual disputes that lack the consumer impact necessary to state a claim." *Kraatz*, 2017 WL 876187 at 8, citing *Bartlett*, 2013 WL 623497 at 3.

23

Mura & Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York  14203
(716) 855-2800 • fax (716) 855-2816

For example, in *Kraatz*, 2017 WL 876187 at 9, this Court found that:

> Plaintiff alleges "[u]pon information and belief," that Defendant "does and will continue to make on-the-spot coverage determinations over the phone without fully and fairly investigating claims" and "may and likely will continue to... omit required information from its correspondence with its members and policy holders."

> To sufficiently plead a consumer-oriented act or practice, a plaintiff must provide factual allegations with some specificity. *Bartlett*, 2013 WL 623497 at 4. Indeed, "conclusory allegations, even of the existence of a claim settlement policy designed to deceive the public, are not sufficient to state a claim under § 349 in the absence of factual allegations in support thereof." *Id.*

> Allegations made "upon information and belief" are not enough. *Id.* For that reason, Plaintiff has not sufficiently demonstrated a consumer-oriented act or practice. Accordingly, Plaintiff's § 349 claim is dismissed.

The *Kraatz* decision cites heavily to *Bartlett v. Nationwide Mut. Fire Ins. Co.*, (2013 WL 623497 at 4 [W.D.N.Y. Feb. 19, 2013]), which held that:

> [plaintiffs] allege only defendant [insurance company's] use of standard policy language with conclusory allegations based upon "information and belief." The plausibility requirement that applies in federal court "is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted) Plaintiffs second claim alleging a violation of New York General Business Law § 349 therefore fails to state a claim for which relief can be granted and is dismissed without prejudice pursuant to Fed.R.Civ.P. 12(b)(6).

In a more recent example, in *H&H Envtl. Sys., Inc. v. Evanston Ins. Co.*, (No. 6:18-CV-06315 EAW, 2019 WL 1129434 at 9 [W.D.N.Y. Mar. 12, 2019]), this Court again held it was appropriate to dismiss GBL § 349 claims under Rule 12(b)(6) where the plaintiff alleged only a coverage dispute with its insurer:

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

Even construing the Complaint liberally, Plaintiff has failed to allege that Defendants' conduct was consumer-oriented because Plaintiff has not alleged facts that demonstrate Defendants' conduct affects other consumers. Plaintiff makes the following conclusory allegation: "Upon information and belief, when confronted with a policyholder's significant loss claim, Defendants regularly and routinely engage in the practice of avoiding or inordinately delaying the settlement of the claim[.]"

The Complaint does not allege any facts in support of this contention, such as naming another insured who was subject to Defendants' alleged conduct. The absence of such factual allegations is fatal to Plaintiff's GBL § 349 claim. "Indeed, any other conclusion would effectively permit a plaintiff to convert almost any garden variety breach of contract cause of action into a violation of section 349." *MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997).

Converting a "garden variety breach of contract cause of action into a violation of GBL § 349" is precisely what the plaintiffs have attempted to do in this lawsuit.

The plaintiffs' GBL § 349 claim is premised almost exclusively on Erie's "DFS Response" – the letter Erie Insurance prepared and issued in response to the March 10, 2020 directive of the New York Department of Financial Services, entitled "CALL FOR SPECIAL REPORT PURSUANT TO SECTION 308, NEW YORK INSURANCE LAW: BUSINESS INTERRUPTION AND RELATED COVERAGE WRITTEN IN NEW YORK." Amended Compl. ¶¶ 111 and 113 and Exhibits G and H thereto.

The amended complaint alleges that Erie's "DFS Response" is "inaccurate and misleading" (Amended Compl. ¶ 164), going on to quote the portion of the letter stating that "coverage considerations depend on the particular facts and circumstances presented, as well as policy provisions and individual coverages that may be part of your policy." Amended Compl. ¶ 165. The amended complaint then alleges that the defendants

25

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

did not abide by this statement because they did not make a coverage determination based "on the particular facts and circumstances presented." Amended Compl. ¶ 166-169.

This is a quintessential example of allegations that amount to nothing more than a "garden variety" coverage dispute "between policy holders and insurance companies concerning the scope of coverage," which the courts above held are "nothing more than private[,] contractual disputes that lack the consumer impact necessary to state a claim" under GBL § 349.

Further, although the amended complaint alleges that "defendants' instructions to insurance agents and representatives that the coverages under its policies do not apply in the case of a virus" were "inaccurate or misleading" (Amended Compl. ¶ 170), the amended complaint fails to allege any such deceptive instructions in that letter.

In fact, nothing in the letter that plaintiffs attach as Exhibit H to their amended complaint states anything about the defendants taking the position that "coverages under its [sic] policies do not apply in the case of a virus[.]" The letter merely quotes coverage sections and states, for example, that coverage will not apply "unless there is a direct physical 'loss' of or damage to Covered Property" or that coverage is not provided "when the facts and circumstances do not meet these requirements." Amended Compl. Exhibit H.

It is unclear what could possibly be construed as "inaccurate or misleading," let alone "deceptive," in a letter that merely quotes coverage provisions from insurance policies and explains that the coverage will not apply where the claims do not meet the requirements of the coverage provisions. Regardless, the amended complaint goes on to allege, without any factual specificity or basis, that these alleged "inaccurate and

26

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

misleading statements were relied on by policyholders and induced them to refrain from filing claims with Defendants." Amended Compl. ¶ 171.

The amended complaint's entire second cause of action is conclusory, speculative and alleges no specific facts. Moreover, it is false, even taking the allegations of the plaintiffs' own amended complaint at face value, as clearly the plaintiffs themselves were not "induced to refrain from filing a claim" with the defendants because they did file such claims, which form the basis of this suit. Amended Compl. ¶ 103.

The plaintiffs' amended complaint further alleges that the defendants' "failure to reasonably investigate the BI and SL Losses as well as their refusal to pay insurance benefits through the present has, at the least, been in reckless and/or grossly negligent disregard of their obligations under each Policy issued to Plaintiffs and other Class members" Amended Compl. ¶ 172. It is unclear how such an allegation is even relevant to GBL § 349 as it alleges no consumer-oriented activity or deceptive practice.

The amended complaint further alleges, in conclusory fashion, that the defendants' "actions are consumer oriented [*sic*] inasmuch as the Policy consists of standard policy forms created, maintained, and issued by Defendants as a group." Amended Compl. ¶ 173. This is precisely the sort of allegation that this Court has repeatedly held is insufficient to allege consumer-oriented conduct. As stated above in *Kraatz* and *Bartlett*, "conclusory allegations, even of the existence of a claim settlement policy designed to deceive the public, are not sufficient to state a claim under § 349 in the absence of factual allegations in support thereof."

All of the plaintiffs' remaining allegations with respect to GBL § 349 are only conclusory and are the exact type of allegation (inadequate "coverage determinations," a

27

failure to "fully and fairly investigate claims," "omitting required information from its correspondence with its members and policy holders") that this Court has explicitly held are insufficient to establish conduct that is consumer-oriented.

       For example, the amended complaint makes only conclusory allegations regarding the content of Erie's "disclaimer letter" and the DFS response letter (Amended Compl. ¶¶ 174, 176), the defendants' coverage determination process (Amended Compl. ¶¶ 175, 180, 181), and vague, factually unspecific references to the defendant's "practices, policies, or procedures".  Amended Compl. ¶¶ 182, 183, 184, 185, 186, 187. None of these allegations is consumer-oriented, nor is any factually specific, as required by the federal pleading standard. As stated by this Court, "[t]he absence of such factual allegations is fatal to [a] GBL § 349 claim."  *H&H Envtl. Sys., Inc. v. Evanston Ins. Co.*, *supra* 2019 WL 1129434 at 9. Further, alleging something "upon information and belief", as plaintiffs' amended complaint repeatedly does, is "not enough" to state a valid claim or cause of action. *Kraatz*, *supra*, 2017 WL 876187 at 9.

       Additionally, it is worth noting that New York state and federal courts have routinely held that New York Insurance Law § 2601 does not give rise to a private cause of action for unfair business practices. *866 E. 164th St., LLC v. Union Mut. Fire Ins. Co.*, No. 16-CV-03678 (SN), 2017 WL 4444334 (S.D.N.Y. Oct. 3, 2017), *citing N.Y. Univ. v Continental Ins.*, 87 N.Y.2d 308, 317 (1995) ("The provisions of the Insurance Law ... are properly viewed as measures regulating the insurer's performance of its contractual obligations, ... not as a legislative imposition of a separate duty of reasonable care.").

       These courts have specifically stated that "[c]laims under a consumer protection statute for which there is no private cause of action cannot be bootstrapped

onto claims under General Business Law § 349, which does create a private right of action." *866 E. 164th St., LLC v. Union Mut. Fire Ins. Co.*, 2017 WL 4444334 (S.D.N.Y. Oct. 3, 2017), *citing Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001).

The allegations of the plaintiffs' second cause of action, even when read liberally in their favor, amount only to a garden-variety contract dispute between policyholder and insurance company regarding the scope of coverage. Policyholders in New York are not permitted to bring private causes of action for unfair business practices regarding the same under New York Insurance Law § 2601, and the plaintiffs in this action should not be permitted to bootstrap their coverage dispute with Erie IC onto claims under General Business Law § 349.

Regardless, given that the plaintiffs' amended complaint fails to allege facts sufficient to maintain a cause of action under New York General Business Law § 349 in any event, the second cause of action of plaintiffs' amended complaint also fails to state a claim for which relief can be granted and, therefore, must also be dismissed pursuant to FRCP 12(b)(6).

## <u>CONCLUSION</u>

For the foregoing reasons, the defendants respectfully requests that this Court grant their motion pursuant to Fed. R. Civ. P 12(b)(6) and dismiss the plaintiffs' amended complaint in its entirety.

DATED:      Buffalo, New York
            September 2, 2020

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK  14203
(716) 855-2800 • FAX (716) 855-2816

Respectfully submitted,

Roy A. Mura, Esq.
Scott D. Mancuso, Esq.
**MURA&STORM, PLLC**
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com
scott.mancuso@muralaw.com

Adam J. Kaiser, Esq.
**ALSTON & BIRD, LLP**
90 Park Ave,
New York, New York 10016
(212) 210-9000
adam.kaiser@alston.com

*Attorneys for Defendants*

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK  14203
(716) 855-2800 • FAX (716) 855-2816