IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

HUTCH & ASSOCIATES, INC. d/b/a
HUTCH'S RESTAURANT and
DELAWARE RESTAURANT HOLDINGS,
LLC d/b/a REMINGTON TAVERN &
SEAFOOD EXCHANGE,

               Plaintiffs,

    -vs-                                 Case No. 1:20-cv-00896

ERIE INSURANCE COMPANY OF NEW
YORK, ERIE INDEMNITY COMPANY
d/b/a, ERIE INSURANCE GROUP, ERIE
INSURANCE COMPANY, ERIE
INSURANCE PROPERTY & CASUALTY
COMPANY, ERIE INSURANCE
EXCHANGE, and FLAGSHIP CITY
INSURANCE COMPANY,

               Defendants.

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Roy A. Mura, Esq.
Scott D. Mancuso, Esq.
**MURA&STORM, PLLC**
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com
scott.mancuso@muralaw.com

Adam J. Kaiser, Esq.
**ALSTON & BIRD, LLP**
90 Park Ave,
New York, New York 10016
(212) 210-9000
adam.kaiser@alston.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................... 1

     I.     PLAINTIFFS' AMENDED COMPLAINT FAILS TO PLAUSIBLY
           ALLEGE DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY ........ 1

          A.  Policy Interpretation Issues ............................................................................. 2

          B.  Governing Case Law, and Courts in Many Jurisdictions Across the
              Country, Have Found Allegations Related to COVID-19 Are Not Direct
              Physical Loss of or Damage to Property ......................................................... 7

          C.  Plaintiffs' Efforts to Distinguish Defendants' Cases Are Unavailing ............ 14

     II.    PLAINTIFFS' AMENDED COMPLAINT FAILS TO PLAUSIBLY
           ALLEGE COVERAGE UNDER THE CIVIL AUTHORITY PROVISION ....... 16

          A.  The Amended Complaint Fails to Plead that COVID-19 Caused Direct
              Physical Loss of or Damage to Nearby Property ........................................... 16

     III.   PLAINTIFFS' AMENDED COMPLAINT FAILS TO PLAUSIBLY
           ALLEGE A VIABLE CAUSE OF ACTION UNDER NEW YORK
           GENERAL BUSINESS LAW § 349 ................................................................. 17

          A.  Garden Variety Commercial Insurance Coverage Disputes Are Not Consumer-
              Oriented Activity ............................................................................................. 17

          B.  A Denial of Coverage Is Not Materially False and Deceptive Activity ......... 18

CONCLUSION ............................................................................................................................ 18

i

# TABLE OF AUTHORITIES

**Federal Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 18

**State Statutes**

New York General Business Law § 349.............................................................1, 17, 18

**Cases**

*Advance Watch Co. v. Kemper Nat'l Ins. Co*., 99 F.3d 795 (6th Cir. 1996)...................................3

*Bailey v. Fish & Neave*, 8 N.Y.3d 523 (2007) ...................................................................4

*Bartlett v. Nationwide Mut. Fire Ins. Co.*, No. 12-CV-435, 2013 WL 623497
(W.D.N.Y. Feb. 19, 2013) .......................................................................................17

*Blue Springs Dental Care, LLC v. Owners Ins. Co.*, No. 20-CV-00383-SRB,
2020 WL 5637963 (W.D. Mo. Sept. 21, 2020) ...........................................................9

*Breed v. Insurance Co. of North America*, 46 N.Y.2d 351 (1978) ..................................4

*Commercial Union Ins. Co. v. Flagship Marine Servs*., 190 F.3d 26 (2d Cir. 1999).....................3

*Consolidated Edison Co. of N. Y., Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208 (2002) .......................3

*Diesel Barbershop, LLC v. State Farm Lloyds*, No. 20-CV-461-DAE,
2020 WL 4724305 (W.D. Tex., Aug. 13, 2020)..........................................................14

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB
(Michigan Cir. Court., July 1, 2020)..........................................................................15

*Gessin Elec. Contractors, Inc. v. 95 Wall Assocs., LLC,* 74 A.D.3d 516 (1st Dept. 2010)..............4

*Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of America*, No. 20-CV-2939-TWT,
2020 WL 5938755 (N.D. Ga. Oct. 6, 2020) ........................................................5, 6, 9

*Hillcrest Optical, Inc. v. Continental Cas. Co.*, No. 20-CV-275-JB,
2020 WL 6163142 (S.D. Ala. Oct. 21, 2020) .........................................................6, 10

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyds*, No. 20-cv-1605-T-30AEP,
2020 WL 5791583 (M.D. Fla. Sept. 9, 2020) ............................................................10

*Kraatz v. USAA Cas. Inc. Co.*, No. 16-cv-00103-FPG, 2017 WL 876187 (W.D.N.Y 2017)..17, 18

*Mark's Engine Co. No. 28 Rest. v. Travelers Indem. Co.*, No. 20-cv-04423-AB-SK,
2020 WL 5938689 (C.D. Cal. Oct. 2, 2020)....................10

*Mudpie, Inc. v. Travelers Ins. Co of America*, No. 20-cv-03213-JST, 2020 WL 5525171 (N.D.
Cal. Sept. 14, 2020)....................5

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323
(S.D.N.Y. 2014)....................2, 4, 7, 8, 14

*O'Brien Sales and Marketing Inc. v. Transportation Ins. Co.*, No. 20-cv-02951
(N.D. Calif., Oct. 9, 2020)....................12, 13, 16

*Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, 20-CV-907-CAB-BLM,
2020 WL 5847570 (S.D. Calif. Oct. 1, 2020)....................10, 11, 13, 16

*Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33
(2d Cir. 2006)....................8

*Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 24 A.D.3d 743, 806 N.Y.S.2d 709 (2005)....................8

*Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, Cv 20-6954-GW-SKx, 2020 WL 5742712
(C.D. Cal. Sept. 10, 2020)....................6

*Rose's 1, LLC v. Erie Insurance Exchange*, Civil Case No. 2020 CA 002323 B (D.C. Super. Ct.
Aug. 6, 2020)....................15

*Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47 (2d Cir. 1992)....................17

*Russell-Stanley Holdings, Inc. v. Buonanno,* 327 F. Supp. 2d 252 (S.D.N.Y. 2002)....................4

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20-cv-2160,
2020 WL 5630465 (N.D. Ill. Sept. 21, 2020)....................10

*Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*, 448 F. Supp. 287
(W.D.N.Y. Mar. 25, 2020)....................2, 4, 8

*Schlamm Stone & Dolan, LLP. v. Seneca Ins. Co.*, 6 Misc. 3d 1037(A),
2005 WL 600021 (Sup. Ct., N.Y. Co., 2005)....................8

*Social Life Magazine, Inc., v. Sentinel Insurance Company Limited*, No. 20 Civ. 3311-VEC,
(S.D.N.Y. 2020)....................13

*Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-cv-03127-SRB,
2020 WL 4692385 (W.D. Mo. Aug. 12, 2020)....................8, 9

iii

*West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Ins. Cos.,*
No. 2:20-cv-05663 (C.D. Calif. Oct. 27, 2020) ..........................................................1, 5, 6, 10, 12

## PRELIMINARY STATEMENT

This memorandum of law is submitted in reply to plaintiffs' opposition to, and in further support of, the pre-answer motion of the defendant Erie Insurance Company ("Erie"), for dismissal of the plaintiffs' amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) based on the amended complaint's failure to state a claim upon which relief can be granted.

As set forth below, the amended complaint fails to allege sufficient facts to maintain a cause of action for breach of contract and/or declaratory relief related to the subject coverage dispute.[1]  Moreover, the amended complaint fails to allege sufficient facts to maintain a cause of action under General Business Law § 349. For these reasons, the plaintiffs' amended complaint must be dismissed in its entirety.

Plaintiffs admit they are seeking coverage as a result of executive orders that compelled them to temporarily stop dine-in service at their restaurants, not because their property or nearby property was damaged.  Court after court has held, however, that government orders designed to slow the person-to-person spread of COVID-19 do not trigger business interruption coverage because COVID-19 does not cause direct physical loss of or damage to property.

## ARGUMENT

**I.      PLAINTIFFS' AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY**

Plaintiffs acknowledge that the primary issue on this motion, at least with respect to the plaintiffs' first cause of action for breach of contract and declaratory relief, is whether, within the

---

[1] Plaintiffs attempt improperly to introduce into the record factual allegations and documents not attached to or incorporated by their amended complaint nor judicially noticeable.  *West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Ins. Cos.,* No. 2:20-cv-05663, Doc. 34 at 5-7 (C.D. Calif. Oct. 27, 2020).  The Court should strike or disregard those allegations and documents.

eight corners of the amended complaint and the policy, the alleged "presence of COVID-19" is "direct physical loss of or damage" to property, as a matter of law (Doc. 20 at 21).

As set forth in Erie's initial memorandum of law (Doc. 11-3 at 12), New York case law holds that, when applying the language "direct physical loss of or damage," the insured must allege "some form of actual, physical damage" to property. *Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*, 448 F. Supp. 287, 293 (W.D.N.Y. Mar. 25, 2020).

Further, New York courts have held that the phrase "direct physical loss of or damage" "unambiguously" requires "actual, demonstrable harm of some form to the premises itself, rather than the "forced closure of the premises for reasons exogenous to the premises themselves." *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014).

For this reason, the allegations in the plaintiffs' amended complaint that "Plaintiffs' Premises, personal property, and dependent property: (a) were exposed to the Virus, (b) had the Virus or persons with CV-19 present at their respective locations, and/or (c) could no longer be used or operated due to orders of civil authorities issued in response to the Virus and CV-19" (Amnd. Compl. ¶ 63 [Doc. 9 at 10]) are not allegations of "direct physical loss of or damage" to property as they do not allege "actual, demonstrable harm of some form to the premises itself."

### A.  Policy Interpretation Issues

The plaintiffs' first argument with respect to policy interpretation is that the subject policy does not contain specific exclusionary language for "viruses." (Doc. 20 at 22). The plaintiffs' argument in this regard is specious and is based on a logical fallacy that merely because a particular cause of loss may theoretically be specifically excluded, this necessarily means that that same particular cause of loss must always, otherwise, be a covered cause of loss. This is plainly false.

The absence of an exclusion cannot create coverage. The plaintiffs must first and foremost allege the existence of a "direct physical loss of or damage" to property, as that language has been interpreted under New York law. This threshold requirement exists regardless of any exclusion contained in the policy. *See Consolidated Edison Co. of N. Y., Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 218 (2002) ("Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage."); *Commercial Union Ins. Co. v. Flagship Marine Servs.*, 190 F.3d 26, 33 (2d Cir. 1999) (quoting *Advance Watch Co. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795, 805 (6th Cir. 1996) ("The absence of an exclusion cannot create coverage."). The requirement that the plaintiffs allege coverage in the first instance does not change merely because the policy does or does not include any specific exclusion regarding the plaintiffs' alleged theory of loss. Put simply, Plaintiffs cannot rely on the absence of an exclusion to establish coverage where coverage does not exist.

Plaintiffs set forth the same logical fallacy regarding the interplay of "coverages" and "exclusions" with respect to various causes of losses that are specifically excluded under the policy (Doc. 20 at 25). Again, the existence of an exclusion in a policy, such as for damage caused by "radiation," does nothing to suggest that a policy that does not contain such an exclusion would automatically consider any claims for radiation damage to be "direct physical loss of or damage" to property.

With respect to the plaintiffs' final policy interpretation argument regarding the phrase "direct physical loss of or damage," the plaintiffs argue that while "direct physical damage" may mean some physical alteration to property, "direct physical loss" may only mean the "physical deprivation" of property, evidently meaning its loss of use (Doc. 20, pg. 27). To the contrary, New York law requires courts to give meaning to all policy terms and to read them within the context of

3

the policy as a whole.  *Russell-Stanley Holdings, Inc. v. Buonanno,* 327 F. Supp. 2d 252, 256 (S.D.N.Y. 2002) ("[W]hen interpreting a written contract, its terms should be given their ordinary meaning and reconciled with other parts of the contract to avoid inconsistencies."); *Gessin Elec. Contractors, Inc. v. 95 Wall Assocs., LLC,* 74 A.D.3d 516, 518 (1st Dept. 2010) ("The courts should construe a contract in a manner that avoids inconsistencies and reasonably harmonizes its terms."); *see*, *also*, *Breed v. Insurance Co. of North America*, 46 N.Y.2d 351 at 355, 413 N.Y.S.2d at 355, 385 N.E.2d 1280 (1978) ("court[s] may not make or vary the contract ... to accomplish [their] notions of abstract justice or moral obligation"); *Bailey v. Fish & Neave*, 8 N.Y.3d 523, 528 (2007) (courts "may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" [internal citation omitted]). Under those principles, plaintiffs' proffered interpretation of the policy is objectively unreasonable.

First, Plaintiffs' flawed interpretation of the meaning of "direct physical loss" is directly opposite of the manner in which New York courts have interpreted the phrase. Instead, New York courts have specifically held:

> Under New York law, the phrase "risks of direct physical loss" has been interpreted to mean "some form of actual, physical damage" to the insured property.

*Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*, 448 F. Supp. 287, 293 (W.D.N.Y. Mar. 25, 2020), citing *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014).

The plaintiffs' interpretation–that "direct physical loss" means mere "deprivation"  without any accompanying "actual, physical damage" or "demonstrable harm of some form to the premises itself"–is simply not supported by the plain language of the policy or New York law.

To the extent that the plaintiffs believe it necessary to distinguish between the terms "loss" and "damage" as used in the language at issue, the Northern District of Georgia offered a simple but compelling explanation of such a distinction in the recent case, *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of America*, 1:20-CV-2939-TWT, 2020 WL 5938755 (N.D. Ga. Oct. 6, 2020). Significantly, the *Henry's Louisiana Grill* court looked at the exact same policy language at issue here in the context of the COVID-19 pandemic.

The court rejected the very same argument posed by the plaintiffs here—that the term "physical loss" does not require any physical damage.  In so doing, the court determined that the same interpretation of the policy that plaintiffs advance here improperly rewrites the language of the policy by discounting some words and inserting others.  For starters, using standard dictionary definitions, the court held that "physical loss" means the complete destruction of the insured premises, whereas "damage to" meant damage short of complete destruction. *Id*. at *5-6.  "As an illustrative example, a tornado that destroys the entirety of the restaurant results in a 'loss of' the restaurant, while a tree falling on part of the kitchen would represent 'damage to' the restaurant." *Id*. at *5.  The court held that this interpretation was the only one that gave meaning to other policy terms and provisions, such as the period of restoration clause, which contemplates replacing property that was totally destroyed or repairing property that was partially destroyed.[2]  *Id*. at *5-6.

---

[2]  Plaintiffs' proffered interpretation of "direct physical loss" improperly overlooks and is not consonant with the Erie policy's "period of restoration" provision.  *See* Erie Policy Doc. 9-1 at 13. *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of America, supra,* at *5-6 (interpreting "loss" as complete destruction and "damage" as partial destruction is the only interpretation that gives meaning to other policy terms, such as the period of restoration clause); *see also Mudpie, Inc. v. Travelers Ins. Co of America*, 20-cv-03213-JST, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020) ("The words 'rebuild,' 'repair' and 'replace' all suggest that the damage contemplated by the Policy is physical in nature.  But here, there is nothing to fix, replace or even disinfect for Mudpie to regain occupancy of its property."); *West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Ins. Cos.*, No. 2:20-cv-05663, Doc. 34 at 8 (C.D. Calif. Oct. 27, 2020) ("While 'direct physical loss of or damage to property' is not defined in the Policy, it plainly

The court concluded: "the contract language [at] issue here is not ambiguous, and because the Governor's Executive Order did not create a 'direct physical loss' of Plaintiff's dining rooms, the Business Income provision does not apply to Plaintiff's claims." *Id*. at *6. *See also West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Ins. Cos.,* No. 2:20-cv-05663, Doc. 34 at 11 (C.D. Calif. Oct. 27, 2020) ("While Plaintiffs briefly describe the Executive Orders—the acts of civil authority at issue—and contend they were issued based on 'evidence of physical damage to property,' Plaintiffs nevertheless fail to provide sufficient non-conclusory allegations to state a plausible claim.").

Notably, in rendering its decision, the *Henry's Louisiana Grill* court underscored the underlying public policy implications in a case like this.  Citing *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, Cv 20-6954-GW-SKx, 2020 WL 5742712 (C.D. Cal. Sept. 10, 2020), the court reasoned that "holding that the Governor's Executive Order led to a 'physical loss of' the dining rooms would massively expand the scope of the insurance coverage at issue here" and "potentially make an insurer liable for the negative effects of operational changes resulting from any regulation or executive decree, such as a reduction in a space's maximum occupancy." *Id*. at *5.[3]  So too here.

Likewise, in *Hillcrest Optical, Inc. v. Continental Cas. Co.*, 1:20-CV-275-JB-B, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020), the plaintiff argued, similar to the plaintiffs in this case, that the

---

requires, at minimum, that the loss or damage be physical in nature. Indeed, the Policy contemplates a 'period of restoration' after such loss or damage during which property is 'repaired, rebuilt, or replaced.'").

[3]   What the mayor of New York City (or any governmental executive) may think about whether the coronavirus causes "property damage" is irrelevant to the Court's determination of this motion, but even if it were relevant, that language in the New York City executive order cited by plaintiff was included "[a]t the urging of our partner [attorney] Jon [sic] Houghtaling" (*see* http://nypaa.com/wp-content/uploads/2020/04/Insurance-Coverage-for-the-COVID-19-Virus-4.pdf#page=2 last accessed October 10, 2020), the policyholder attorney who claimed to have filed the very first COVID-19-related business interruption claim in Louisiana state court.

term "direct physical loss" must include situations in which plaintiff was "prevented from using its property for its intended purpose[.]" *Id.* at *3.  The court, citing to New York's own *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014), *supra*, found that the "loss of" the property must be both "direct" and "physical," ultimately holding that plaintiff's "loss of usability did not result from an immediate occurrence which tangibly altered its property." *Id.* at *7.

As such, the plaintiffs' concern in differentiating the terms "direct physical loss of" and "direct physical damage to" is unwarranted. These terms carry separate and distinct meanings throughout the policy as a whole.  Indeed, New York courts have already found the full phrase "direct physical loss of or damage" to mean "actual, demonstrable harm" to property, along with expressly determining that  "loss of" in the context of the policy, means loss of the entire property rather than only loss of its use.  Plaintiffs' argument to the contrary does not, and cannot, give meaning to these terms in harmony with the rest of the policy.  Their allegations of the "deprivation" of property, meaning loss of use of the same, are simply not encompassed within the phrase "direct physical loss of or damage" as that language has been interpreted by both New York courts and numerous other courts that have interpreted the same language in the context of the COVID-19 pandemic.  This settled law forecloses plaintiffs' argument.

To that end, the amended complaint does not allege any "direct physical loss of" property because it certainly does not allege that the plaintiffs' property, or any other property is gone, missing, or completely destroyed. For that reason, it must be dismissed.

   **B.**   **Governing Case Law, and Courts in Many Jurisdictions Across the Country, Have Found Allegations Related to COVID-19 Are Not Direct Physical Loss of or Damage to Property**

New York case law leaves no doubt that "direct physical loss of or damage" requires "actual, physical damage" to property and "actual demonstrable harm of some form" to the premises itself. *Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*, 448 F. Supp. 287, 293 (W.D.N.Y. Mar. 25, 2020) (citing *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014)).

The purported authority plaintiffs cite in an attempt to argue otherwise does not salvage their argument in any respect.  Neither of the two cases relied upon by plaintiffs – *Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 24 A.D.3d 743, 806 N.Y.S.2d 709 (2005) and *Schlamm Stone & Dolan, LLP. v. Seneca Ins. Co.*, 6 Misc. 3d 1037(A), 2005 WL 600021 (Sup. Ct., N.Y. Co., 2005) – even contains the phrase "direct physical loss of or damage."  Plaintiffs' citation to those cases, therefore, provides no support for their arguments.  By acting as if those cases are authoritative to the issues in this suit, the plaintiffs are merely attempting to pivot this matter into an irrelevant arena that has no bearing whatsoever on the issue before the court.

Similarly, the plaintiffs' reliance on *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33 (2d Cir. 2006) is misplaced. That decision primarily analyzes whether various exclusions apply and gives no consideration to whether certain allegations constituted "direct physical loss of or damage" as an initial requirement of determining whether coverage had been adequately pled in the first place.

With respect to the actual issue on this motion – whether the mere presence of a virus is "direct physical loss of or damage" (which it is not, in any event) – the plaintiffs disregard the rulings set forth in the governing New York cases and, instead, primarily rely on the one-off rulings of a single judge in Missouri.  In *Studio 417, Inc. v. Cincinnati Ins. Co.*, 20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020), the court drew an erroneous distinction between "physical

loss" and "damage," evidently believing that "physical loss" could not include "damage" because this would make one of the terms superfluous. The *Studio 417* court went on to hold that allegations of the mere presence of the virus on property amount to "direct physical loss to the premises and property" because the virus "deprived Plaintiffs of their property." *Id*. at 4.

However, as discussed above, this flawed interpretation has already been fully addressed by New York courts, which have found that "physical loss *does* require "actual, physical damage" to property and other courts, as discussed above, have found the terms are not superfluous, because "loss of" means the complete destruction of property and "damage" means partial damage to property. As discussed above, courts nationwide are soundly rejecting the *Studio 417* reasoning in the COVID-19 context because it does not afford meaning to all policy provisions and therefore violates bedrock principles of insurance contract construction. *See Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of America*, *supra*. Ultimately, while plaintiffs' objectively unreasonable policy interpretation conveniently omits any attempt to harmonize the "period of restoration" provision, Erie's interpretation, and that of a growing number of federal courts, gives meaning to all policy provisions consistent with the policy as a whole.

The plaintiffs also cite to and rely on another case from Missouri, *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, No. 20-CV-00383-SRB, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020), which "reinforces" *Studio 417* by coming to the same holding. Tellingly, these decisions are both from the same judge, United State District Court Judge Stephen R. Bough. As such, it should not be terribly surprising that Judge Bough "reinforced" his own previous decision on the same issue. Regardless, Judge Bough's two decisions are not only distinguishable in that they apply Missouri law, but more or less exist on an island in the ever-increasing jurisprudence surrounding interpretation of the "direct physical loss of or damage" language in the context of COVID-19.

Indeed, since the time Erie filed this motion to dismiss plaintiffs' amended complaint, even more courts around the country have dismissed these claims on the pleadings. *See, e.g., Infinity Exhibits, Inc. v. Certain Underwriters at Lloyds*, 8:20-cv-1605-T-30AEP, 2020 WL 5791583, at *3-4 (M.D. Fla. Sept. 9, 2020) (virtually identical policy language held unambiguous; dismissing complaint because coverage is available only where there is "actual, concrete damage" that caused the business interruption); *Mark's Engine Co. No. 28 Rest. v. Travelers Indem. Co.*, 2:20-cv-04423-AB-SK, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) (dismissing complaint with identical policy language); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20-cv-2160, 2020 WL 5630465, at *2-3 (N.D. Ill. Sept. 21, 2020) ("'direct physical loss' unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage"; "[t]he coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property" and thus "plaintiff has failed to plead a direct physical loss—a prerequisite for coverage."); *Hillcrest Optical v. Cont. Cas. Co*., No. 20-cv-275, 2020 WL 6163142 (S.D. Ala., Oct. 21, 2020) (dismissing COVID-19 coverage claim based on virtually identical policy language); *West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Ins. Cos.,* No. 20-cv-05663, Doc. 34 at 9 (C.D. Calif. Oct. 27, 2020) (under identical policy language, rejecting plaintiffs' contention "that the loss of *use* of their properties is sufficient to trigger coverage under the Policy" [original emphasis]).

The swell of decisions dismissing COVID-19 business interruption cases throughout the country are dismissing these claims on the basis that policyholders failed to allege "direct physical loss of or damage to" property. Consistent with New York law, courts are doing so even where the operative complaints allege the "existence" of the virus on property.

In *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, No. 20-cv-907-CAB-BLM, 2020 WL 5847570 (S.D. Calif. Oct. 1, 2020), similar to the present action, the policyholder moved for

leave to file an amended complaint alleging that the virus (and people infected with the virus) was on its property, thus supposedly causing direct physical loss of or damage to property.  The court's review of the proposed amended complaint included what the court characterized as "speculative allegations that the COVID-19 virus, or individuals infected by the virus, likely had entered Plaintiffs' premises at the time of the COVID-19 Civil Authority Orders." *Id.* at *1.  The court then stated, "[e]ven assuming the truth of these allegations, the presence of the virus itself, or of individuals infected [by] the virus, at Plaintiffs' business premises or elsewhere do not constitute direct physical losses of or damage to property.  Moreover, even if they do constitute direct physical losses of or damage to property, they were not the cause of the business income losses for which Plaintiffs' seek coverage here." *Id.*

The *Pappy's Barber Shops* court further crystalized this analysis by determining that the "cause of Plaintiffs' business income losses was the COVID-19 Civil Authority Orders themselves, which, as the proposed amended complaint alleges, were 'precautionary measures taken by the state to prevent the spread of COVID-19 in the future' and therefore not issued as a result of loss or damage to property at Plaintiffs' premises or elsewhere. In the absence of the COVID-19 Civil Authority Orders, Plaintiffs would not have closed their business and thus would not have suffered the business income losses for which they now seek coverage." *Id.*

In other words, the court held that whether or not the virus was present was utterly irrelevant to the court's analysis, and therefore found any potential amendment to be futile.  "No amount of artful pleading by Plaintiffs can state a plausible claim that they suffered any business income losses due to direct physical loss of or damage to property at their premises, or due to civil authority orders prohibiting access to Plaintiffs' premises due to direct physical loss or damage to property elsewhere, as required for coverage under the Policy." *Id.*  The same result should follow here.

Similarly, in *O'Brien Sales and Marketing Inc. v. Transportation Ins. Co.*, No. 20-cv-02951, Doc. 40 (N.D. Calif., Oct. 9, 2020), the court dismissed the plaintiff's first amended complaint because it did not plausibly allege a covered loss under the subject policy.  There, plaintiff's first amended complaint specifically alleged at 20-cv-02951, Doc. 21, that:

> 7. "Civil Authority" coverage is implicated by the COVID-19 epidemic because the virus was physically present at businesses and other public places near Plaintiff's and Class Members' businesses.

> 8. Plaintiff's business, and its premises, were physically damaged by the presence of the virus that causes COVID-19. Plaintiff's business was suspended by the presence of the virus and Plaintiff was required to take measures to prevent further interruption and damage.

As such, the plaintiffs in *O'Brien Sales and Marketing*, similar to the plaintiffs in this case, specifically alleged the "presence" of the virus on property, but not that it caused any actual, physical damage to property, as is required under New York law in order for there to be coverage.[4] Further, the policy at issue in that case required "direct physical loss of or damage" for each coverage that the plaintiffs sought, including, similar to the present complaint, Business Income Coverage (*id.*, ¶ 20), Extra Expense Coverage (*id.*, ¶ 26), and Civil Authority Coverage (*id.*, ¶ 31). The *O'Brien Sales and Marketing* court dismissed the plaintiff's first amended complaint on the basis that it did not "plausibly allege a covered loss under the subject policy." The court's decision indicates that the plaintiffs' allegations of the presence of the virus on its property and/or other property were legally insufficient to plead direct physical loss of or damage under the policy.

---

[4] Even if plaintiffs' amended complaint could be read to allege, which it does not, that COVID-19 or the virus physically damaged property, plaintiffs' amended complaint "lacks the factual allegations needed to lend this theory plausibility. The [amended] Complaint merely states that there was 'direct physical loss of or damage to' property." *Cf. West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Ins. Cos.,* No. 2:20-cv-05663-VAP, Doc. 34 at 10 (C.D. Calif. Oct. 27, 2020).

These holdings directly contradict the arguments set forth by the plaintiffs in response to Erie's motion. Moreover, unlike plaintiffs' citation to Judge Bough's decisions, the holdings in *Pappy's Barber Shops* and *O'Brien Sales and Marketing*, *supra*, are far more consistent with the New York cases that have already held that the language "direct physical loss of or damage" requires actual, physical damage to property.

While no court in New York has yet ruled on the issue of whether allegations of the mere presence of a virus on property amount to "direct physical loss of or damage" to that property, it remains true that the court that has had the nearest opportunity to decide this issue was Southern District of New York Judge Caproni in *Social Life Magazine, Inc., v. Sentinel Insurance Company Limited* (20 Civ. 3311 [VEC] [SDNY]).  As stated in Erie's initial memorandum, Judge Caproni, applying New York caselaw, clearly signaled that she felt the allegation of the mere presence of the virus would not amount to "actual, physical damage" to property, memorably stating of the virus: "It damages lungs. It doesn't damage printing presses" (Doc. 11-3, p. 16) and "[it] damages you. It doesn't damage the property."

Judge Caproni's opinions align with the New York requirement of "actual, physical damage" to property, and are indicative of where New York authority will land on this issue.  *Studio 417, Inc. v. Cincinnati Ins. Co.*, 20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020), is dismissive of Judge Caproni's opinions ("[r]egardless of the allegations in *Social Life* or other cases" *Id*. at 6) and is distinguishable under New York law for that reason alone.

In short, established New York case law, Judge Caproni's opinion, and the recent holdings of various federal and state courts around the country, provide that the term "direct physical loss of or damage to" unambiguously means "actual, physical damage" or "actual, demonstrable harm to

the premises itself", and that allegations of the mere presence of a virus or people infected with a virus on property do suffice to allege these things, as a matter of law.

As an alternative argument to seeking to expand the definition of "direct physical loss of" to include "loss of use," the plaintiffs also attempt to argue that the amended complaint's allegations of the mere presence of the virus, or persons infected with a virus, on property is analogous to a "harmful substance," similar to "noxious gas" or the "contamination of well water" (Doc. 20 at 38), and that this, in itself, may constitute an allegation of damage to property.

Oddly, plaintiffs cite to the decision noted in *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 330 (S.D.N.Y. 2014), for the language that "'physical loss or damage,' does not require that the physical loss or damage be tangible, structural or even visible" (Doc. 20 at 38). However, plaintiffs' citation ignores the remainder of the holding in *Newman Myers*, which is that "[t]he critical policy language here—'direct physical loss or damage'— similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage." *Id.* at 331 (taking "no position" on whether *TRAVCO, Essex, and Hardinger* were "correctly decided," emphasizing that "each involved the closure of a building due to… a physical change for the worse in the premises."). By contrast, plaintiffs' amended complaint in this action does not allege "actual, physical damage" to property; it does not allege that the virus or people infected with the virus caused any actual, demonstrable physical damage to the plaintiffs' premises or nearby property – only that the alleged presence of the virus deprived the plaintiffs of their ability to use their property.

## C.      Plaintiffs' Efforts to Distinguish Defendants' Cited Cases Are Unavailing

Finally, the plaintiffs attempt to draw distinctions between this case and the cases regarding the COVID-19 pandemic that Erie cited in its initial memorandum of law.  With respect to *Diesel*

*Barbershop, LLC v. State Farm Lloyds*, No. 20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex., Aug. 13, 2020), the plaintiffs are unnecessarily focused on the existence of a "virus exclusion" in the policy and ignore the fact that the court specifically held that the "Plaintiffs failed to plead a direct physical loss" because "the loss needs to have been a 'distinct, demonstrable physical alteration of the property'." *Id.* at *5. The existence of a virus exclusion is irrelevant to the holding that there is no coverage in the first instance. The same can be said of *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB (Michigan Cir. Court., July 1, 2020), in which the existence of a virus exclusion was not relevant to the part of the court's holding that the property did not sustain direct physical loss of or damage (Doc. 11-3 at 20).

Regardless, the cases cited in Erie's initial memorandum provide further authority for the New York holdings that "direct physical loss of or damage' requires demonstrable damage to property. *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB (MI Cir. Court., July 1, 2020), held that the phrase "direct physical loss of or damage to property" required "something with material existence. Something that is tangible. Something . . . that alters the physical integrity of the property" (Doc. 11-3, p. 21). *Rose's 1, LLC v. Erie Insurance Exchange*, Civil Case No. 2020 CA 002323 B (D.C. Super. Ct. Aug. 6, 2020), cited *Roundabout Theatre Co.* and *Newman Myers*, *supra*, in holding that "'direct loss' implies some form of direct physical change to the insured property" and that there was "no 'direct physical loss' to Plaintiffs." (Doc. 11-3 at 21).

After considering the above caselaw, it is worth re-visiting the allegations in the plaintiffs' amended complaint for a reminder as to how exactly the amended complaint fails to meet the burden of alleging "actual, physical damage" to property, as required by New York law. The plaintiffs allege their properties: "(a) were exposed to the Virus, (b) had the Virus or persons with CV-19

present at their respective locations, and/or (c) could no longer be used or operated due to orders of civil authorities issued in response to the Virus and CV-19" (Amnd. Compl. ¶ 63).

Exposure of a virus to property is not an allegation of "actual, physical damage" to property. Having a virus or persons with a virus present at a property is not an allegation of "actual, physical damage" to that property. As *Pappy's Barber Shops* and *O'Brien Sales and Marketing*, *supra*, held, that the mere "presence" of COVID-19 does not constitute "direct physical loss of or damage" to property.   As such, the allegations of the plaintiffs' amended complaint fail to plausibly allege direct physical loss of or damage to property at the plaintiffs' premises, which the plaintiffs concede is required to maintain their first cause of action.

## II.   PLAINTIFFS' AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE COVERAGE UNDER THE CIVIL AUTHORITY PROVISION

### A.   The Amended Complaint Fails to Plead that COVID-19 Caused Direct Physical Loss of or Damage to Nearby Property

The plaintiffs' arguments with respect to their claim for Civil Authority coverage fail for the same reason as their claims for Income Protection Coverage and Extra Expense Coverage fail. The amended complaint fails to allege direct physical loss of or damage to property—in this context, property other than property on the insured's premises.

The Civil Authority coverage only applies "[w]hen a peril insured against causes damage to property" other than property at the insured premises but "not more than one mile" from same ("nearby property").  The plaintiffs argue that the amended complaint alleges that "COVID-19 was present at . . . property within one mile of Plaintiff's premises," citing to ¶¶ 63-66 (Doc. 20 at 40). At most, these paragraphs merely allege that the "Virus was present at . . . property within one mile of Plaintiff's property." (Amnd. Compl. ¶66.)  As thoroughly explained above, the allegation that

the virus was merely "present," at some as yet undisclosed location with one mile of the insured's premises, does not amount to an allegation of "direct physical loss of or damage" to property.

III.   **PLAINTIFFS' AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE A VIABLE CAUSE OF ACTION UNDER NEW YORK GENERAL BUSINESS LAW § 349**

 A.   **Garden Variety Commercial Insurance Coverage Disputes Are Not Consumer-Oriented Activity**

Plaintiffs mischaracterize Erie's position with respect to the case law on General Business Law § 349 (GBL § 349), by stating that Erie implies "insurance coverage disputes can never involve consumer-oriented activities" (Doc. 20 at 48).

Plaintiffs' citation to and reliance on *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47 (2d Cir. 1992) is misplaced. That case merely held that GBL § 349 can theoretically be applied to insurance company defendants.  Erie does not dispute this; it merely elaborates on this general principle by pointing to the more recent and relevant New York case law which specifically hold that when a dispute concerns the "scope of coverage" under an insurance policy, this is "almost uniformly" not appropriate under GBL § 349.  *See, e.g., Kraatz v. USAA Cas. Inc. Co.*, No. 16-cv-00103-FPG, 2017 WL 876187 at * 8 (citing *Bartlett v. Nationwide Mut. Fire Ins. Co.*, No. 12-CV-435, 2013 WL 623497, at *3 [W.D.N.Y. Feb. 19, 2013]) ("[C]ourts almost uniformly find that disputes between policy holders and insurance companies concerning the scope of coverage are nothing more than private[,] contractual disputes that lack the consumer impact necessary to state a claim.").  Because plaintiffs failed to plead anything beyond a "garden variety" coverage dispute by pointing to allegations in the amended complaint that Erie "failed to investigate the particular facts and circumstances" of claims and "issued standard, form denial letters that did not discuss any facts particular" to the claims (Doc. 20 at 50), their  GBL § 349 claim fails as a matter of law.  *See Kraatz, supra* 2017 WL 876187 at *9 (allegations that the insurer failed to "fully and fairly

investigat[e] claims" and "omit[ted] required information from its correspondence with its members and policy holders" were too conclusory to allege a GBL § 349 claim).

### B.   A Denial of Coverage Is Not a Materially False and Deceptive Activity

Finally, plaintiffs continue to argue that Erie engaged in "false and deceptive" activities, but the allegations of plaintiffs' amended complaint point to nothing more than Erie's issuance of its "IMPORTANT NOTICE TO OUR ULTRAPACK  PLUS POLICYHOLDERS REGARDING COVID-19 – CORONAVIRUS", which merely stated that coverage would not apply "unless there is a direct physical 'loss' of or damage to Covered Property" or that coverage is not provided "when the facts and circumstances do not meet these requirements." Amnd. Compl. Exh. H (Doc. 9-8 at 2).  None of the allegations of the amended complaint, or the exhibits attached thereto, amount to allegations that Erie has "materially misled and deceived its consumer base." (Doc. 20 at 53). The plaintiffs take this position solely based on their coverage dispute with Erie, evidently because they believed they were somehow absolved from alleging "direct physical loss of or damage" to property simply because their policies did not include virus exclusions.

Every argument the plaintiffs make in support of their GBL § 349 cause of action shows the claim for what it is—a garden variety scope of coverage dispute that is routinely dismissed by New York courts. As the plaintiffs' amended complaint fails to allege facts sufficient to maintain a cause of action under GBL § 349, the second cause of action of plaintiffs' amended complaint fails to state a claim for which relief can be granted and, therefore, must also be dismissed pursuant to F. R. Civ. P. Rule 12(b)(6).  *Kraatz v. USAA Cas. Inc. Co.*, No. 16-cv-00103-FPG, 2017 WL 876187 at * 9.

**<u>CONCLUSION</u>**

For the foregoing reasons, the defendants respectfully request that this Court grant their motion pursuant to Fed. R. Civ. P 12(b)(6) and dismiss the plaintiffs' amended complaint with prejudice.

DATED:      Buffalo, New York
              October 30, 2020

                                  Respectfully submitted,

                                    Roy A. Mura, Esq.
                                    Scott D. Mancuso, Esq.
                                  **MURA&STORM, PLLC**
                                    930 Rand Building
                                    14 Lafayette Square
                                    Buffalo, New York 14203
                                    (716) 855-2800
                                    roy.mura@muralaw.com
                                    scott.mancuso@muralaw.com

                                    Adam J. Kaiser, Esq.
                                    **ALSTON & BIRD, LLP**
                                    90 Park Ave,
                                    New York, New York 10016
                                    (212) 210-9000
                                    adam.kaiser@alston.com

                                    *Attorneys for Defendants*